THE NEW BIRMINGHAM IRON & LAND CO. ET AL. v. A. B. BLEVENS ET AL.

No. 1261.

### 1. Receiver of Corporation—Appointment—Action by Creditor.

A creditor of a corporation having no lien upon its property is not entitled to have a receiver appointed for the better security of his debt, although there be manifest danger that the property will be lost or disposed of before he can obtain an execution against it.

### 2. Same—Action by Stockholder—Construction of Statute.

Article 1461, Revised Statutes, authorizing the appointment of a receiver in suits between parties or joint owners of property, where it is shown that the property is in danger of being lost, removed or materially injured, applies to suits between a corporation and its stockholders only in cases where the corporation has been dissolved, or is insolvent, or in imminent danger of insolvency, or has forfeited its corporate rights, or where receivers have been heretofore appointed by the usages of courts of equity.

### 3. Same—Appointment in Equity.

In an action against a corporation by a stockholder, brought in his own name and to protect or enforce his rights and interests as a stockholder, equity will not interfere by the appointment of a receiver, unless it be shown that plaintiff has exhausted all the means within his reach to obtain, within the corporation itself, a redress of his grievances at the hands of the directors and shareholders.

### 4. Same—Appointment of Receiver in Vacation.

Upon proper application, a receiver may be appointed by the judge in vacation as well as during a term of the court.

### 5. Same—Appeal Within Twenty Days.

Where a receiver was appointed in vacation, and also a motion to vacate the appointment was made and overruled, and at the next ensuing term of court these

orders were directed to be entered upon the minutes of the court, an appeal from the refusal of the judge to vacate the order of appointment could be perfected within twenty days from the date of such entry upon the minutes of the court.

**6. Same—Fees of Receiver a Charge Upon the Property.**

Where, upon appeal, the appointment of a receiver is vacated, because unauthorized, the receiver's fees are, nevertheless, along with the expenses of the receivership, a charge upon the property committed to his care.

APPEAL from Cherokee.   Tried below before Hon. T. C. DAVIS.

*Cain & Knox,* for appellants.—1.   A complainant who has no subsisting interest in, or lien upon, property which is in imminent danger of being lost, cannot have a receiver appointed.   High on Receivers, secs. 11-18;  Carter Bros. v. Hightower, 79 Texas, 137;  Railway v. Gay, 86 Texas, 572;  20 Am. & Eng. Ency. Law, 30-32;  Cook on Stockholders (3 ed.), secs. 746-863.

2.   Receiver is never appointed when there is any other safe or expedient remedy.   It must appear that irreparable injury will result unless appointment is made.   In this cause there is a clear remedy by attachment and injunction for every feature of the case.   The creditors may be enjoined from enforcing their judgment, and Blevins could attach to satisfy his debt.   High on Receivers, sec. 10;  20 Am. & Eng. Ency. Law, 16-18, note 2, p. 21, and pp. 30-35;  Morawetz, Corp., secs. 281, 282, 283, 417, 424, 589;  Gluck & Becker on Receivers, sec. 24;  Taylor, Corp., secs. 822, 631;  Rev. Stats., arts. 4489, 2873, 1351, 152.

3.   Courts of equity have not the power under their general equity jurisdiction to appoint receivers or corporate bodies.   There must be statutory authority, or the court cannot act except to enjoin wrongful acts or give judgment against offending officers.   High on Receivers, secs. 287, 288, 289;  Gluck & Becker on Receivers, sec. 22;  Beach on Receivers, secs. 403-409;  20 Am. & Eng. Ency. Law, 57, 270, and notes.

4.   The statutes of Texas do not give this authority on the complaint of individuals.   Rev. Stats., art. 1467;  Neal v. Hill, 16 Cal., 495;  French Bank Case, 53 Cal., 495;  Pond v. Railway, 130 Mass., 194;  Baker v. Backus, 32 Ill., 79;  80 New York, 609;  Espuela Land and Cattle Co. v. Bindle, 5 Texas Civ. App., 18.

5.   The action to set aside the judgments, if maintained at all, must be in the name of the corporations and for their use, and before minority stockholders can bring such suit, demand must be made upon the directors who are its managing trustees, or sufficient reasons alleged for not making such demand.   Taylor, Corp., secs. 687, 693;  Morawetz on Corp., secs. 240, 244, 285;  Cook on Stockholders, sec. 664, et seq.;  McIlheny v. Binz, 80 Texas, 9.

*Perkins & Barron* and *Branch & Garrison,* for appellees.—1.   In equity proceeding a district judge of the State of Texas has power at any time to appoint a receiver, when the necessity demands it.   Rev. Stats., art. 1461;  71 Texas, 444.

2.   A judgment rendered in chambers confirming an order appointing

a receiver, when the parties are before the court and are heard, is final and can be appealed from, and a failure to appeal from such judgment is a bar to having it heard again. Sayles' Supplement, art. 1380; High on Receivers, sec. 37; 32 S. W. Rep., 586.

3. When the directors or officers of a corporation are mismanaging the business or jeopardizing the rights of the stockholders and creditors, the court may appoint a receiver upon the application of a stockholder. 75 Texas, 451; 20 Am. & Eng. Encyc. Law, 27, 272, note.

4. If it appears that the trustee has been guilty of misconduct, waste or improper disposition of the trust estate, or that he has an undue bias towards one of two conflicting parties, or that the estate is liable to be wasted or destroyed, a proper case is made out for the appointment of a receiver. And the court exercises a discretion to be governed by all the circumstances in the case, one of the most natural of which is the probability of the plaintiff being ultimately entitled to the decree. 20 Am. & Eng. Ency. Law, 305, 320, note 4; Gluck & Becker on Receivers, 42; High on Receivers, secs. 293-295a, 324, 327.

PLEASANTS, ASSOCIATE JUSTICE.—This appeal is from an interlocutory decree of the District Court of Cherokee County, appointing John B. Reagan of said county receiver of the property of the New Birmingham Iron & Land Company and the New Birmingham Iron & Improvement Company, two corporations chartered by the State of Texas, and having each its domicile in the said county of Cherokee; the first chartered in 1889, and the second in 1891. The purpose of the first named company was to buy and sell lands, and to establish and build up a manufacturing city in said county. The appointment of the receiver was made upon the prayer of the plaintiffs in the suit of A. B. Blevins, Kyle Pace and Kathleen Egan, against the aforesaid corporations, and James A. Mahony, Wm. R. Utley, Leopold Wallach, Charles M. Wells and Richard L. Coleman, the plaintiffs suing for themselves, and for such others of the stockholders of the New Birmingham Iron & Land Company (or, as it is otherwise designated in the petition, "the old company") in like situation with the plaintiffs, and who were willing to make themselves parties and contribute to the expense of the suit.

The order for the appointment was first made in vacation by the judge for the judicial district embracing the county of Cherokee, before the plaintiffs' petition was filed, and afterwards, when the petition had been filed, the same order was made by the same judge, and this order was attached to the petition. This was on the 10th of September, and on same day said Reagan duly qualified. The petition averred that said New Birmingham Iron & Land Company, in pursuance of the purpose of its organization, acquired ore, and timbered lands having upon them well improved farms, established and improved a site for a city, naming it "New Birmingham," and erected thereon a smelting furnace, a brick-making plant, two hotels, besides other improvements, and also acquired a large amount of personal property of various kinds. That

in June and July, 1891, said company was in a prosperous condition and was possessed of assets, real and personal, of the aggregate value of (as plaintiffs believe) $1,500,000, and, as plaintiffs believed, owed not exceeding $500,000. That plaintiffs then, and had for a long time previous, owned and still owned stock in said company of the aggregate value of $101,000; that the principal creditors were the defendants, James A. Mahony, William R. Utley, Leopold Wallach and Richard L. Coleman; that Coleman was and had been for a long time president of the said company; that he and the other defendants owned and controlled a large amount of the stock of the company; that prior to June, 1891, said company had executed a deed of trust upon its franchise and property to the Holland Trust Company to secure an issue of 300 seven per cent bonds of $1000 each, payable in the year 1909, and said bonds had been pledged to said creditors and stockholders as security for money loaned by them to improve the property of said company.

The plaintiffs then charge, upon their information and belief, that Coleman and the other creditors above named and one Charles W. Wells, on June 1, 1891, conspired to obtain possession of all of the property of said company, and to convert the same to their use and benefit; and that, in furtherance of said conspiracy, the said Coleman, on June 11, 1891, under pretense that the debts of the company were pressing, issued a circular to the stockholders calling for a meeting at New Birmingham on July 15, 1891, and in said circular the stockholders of the company are advised that, upon consultation with the creditors and some of the largest stockholders, the directors think it possible to make an arrangement with the creditors for the cancellation of the debts of the company, by conveying its property to a new company to be organized by them with such bonds and capital stock as may be agreed upon, and by which such equitable portion of the common stock of the new company shall be given to this company as will enable the directors to make a distribution thereof to the stockholders of the existing company at the rate of not less than 25 per cent of their holdings, and that it is proposed that the new company shall, with additional capital, make some extensions to the manufacturing plant, and thereby, with the existing property, it was hoped that a substantial value would be given to the stock of the new company in a reasonable time; that plaintiffs, having confidence in Coleman, and believing the debts of the company would be cancelled and equitable distribution of the stock of the new company would be made, acquiesced in the proposed plan, and voted by proxy for said proposed reorganization and transfer of the property of the Birmingham Iron & Land Company (which is in said petition designated as the old company) to the company proposed to be organized; that a charter was procured by defendants on July 13, 1891, for the said proposed company, and in pursuance of the action of the stockholders of the old company, all of the property of said company was transferred to the new company, the corporate name being, the New Birmingham Iron & Improvement Company; and that, at a pretended

meeting of the stockholders of said last named company, held on July 15, 1891, and which meeting, as plaintiffs were informed and believed, was dominated by the aforesaid defendants, resolutions were passed providing for the issuance of $1,000,000 six per cent gold bonds of said company, and $700,000 of which were to be delivered to said creditors, and $700,000 of preferred stock in said company, and $2,480,000 of common stock therein (out of $2,800,000 of common stock) also to be delivered to said creditors, and $750,000 of the common stock to be delivered to the old company.

Plaintiffs then charge that said new company had failed and refused to deliver and still fails and refuses to deliver to plaintiffs any stock in said company, although they have in good faith, with other stockholders, surrendered their stock in the old company; that the new company, as plaintiffs are informed and believe, agreed to accept the transfer of the property of the old company under the terms and conditions aforesaid, and thereby agreed to cancel the entire indebtedness of the old company. The plaintiff Blevins avers that, believing the purpose of the incorporation of the new company, when the action of its stockholders of the 15th of July was made known to him, was to destroy the old company, and to cheat and defraud him and other stockholders thereof, after remonstrating with defendants and failing to obtain any assurance that justice would be done him, he instituted suit in the District Court of Cherokee County against said old and new company, and the Central Trust Company of New York, and the said Coleman, James A. Mahony and Wm. R. Utley, and one Richard J. Mahony and George F. Dalton, for the purpose of having the transfer of the property of the old company cancelled and said company restored to all its rights, and the deed of trust executed to the Central Trust Company annulled, and all of the acts aforesaid declared null and void; and that, upon trial of said cause, the transfer of the property to the new company was held by the court to be valid; but the issuance of bonds and delivery thereof to the creditors, and the issuance of both common and preferred stock to them and the execution of the deed of trust to the Central Trust Company, were all declared and adjudged null and void; that from this judgment plaintiff perfected an appeal to the Supreme Court of the State, and, pending the appeal, Charles W. Wells, acting for himself and as agent for defendants, Mahony, Utley and Wallach, joined by defendant Coleman, acting for himself, and as president of said two companies, on August 20, 1892, proposed to plaintiff, if he would dismiss his said suit on the docket of said District Court, that the parties making said proposition would pay him in cash $4600, and would cancel and surrender certain vendor's lien notes held by said companies against him, of the aggregate amount of $4000, and would cancel certain other indebtedness of plaintiff, also of about the value of $4000. This proposition plaintiff accepted, and dismissed his suit, but said defendants have not performed said agreement, and still fail and refuse to perform same, and that the defendants, Mahony, Utley and Wallach, in violation of

their agreement that the debts of the old company should be cancelled, on to-wit, March 11, 1892, instituted suit for their debt against both companies in the Supreme Court of New York.

That defendant Coleman, as plaintiffs are informed and believe, well knowing that said indebtedness was unjust and inequitable, aided and assisted said parties to obtain said judgment; that he appeared in New York, as plaintiffs believe, for the sole purpose of giving the New York court jurisdiction over him, and the said two companies; and after employing counsel to appear for him in said suit, the said Coleman failed to answer to the suit, and judgment pro confesso was taken on May 20, 1892, for the plaintiffs against both said companies for the sum of about $536,845.95, with interest claimed, and for costs; and that afterwards on April 23, 1894, the said defendants, Mahoney, Utley and Wallach, instituted suit upon the judgment obtained as aforesaid in New York against said companies in the District Court of Cherokee County, and that said Coleman, knowing that said judgment was fraudulently obtained and was illegal and inequitable, and that a good and valid defense could be made to the said suit, although duly cited to appear and answer, fraudulently declined to do so, and allowed plaintiffs to take judgment by default for $600,103.09.

Plaintiffs further alleged that the new company had been in possession of all the property and assets of the old company for more than four years; that soon after coming in possession, operations were suspended by the directors of said company at the furnace, and that the brick plant and all the property has been idle, and no revenue has been produced since August, 1891, and that said property is depreciating and wasting; that the improved farms and the residences thereon are neglected, and said residences and other improvements are neglected, and in consequence are rapidly going to decay; that said residences and farms, if kept in repair, could be made to yield a good revenue; that they are informed and believe that no meeting of the stockholders or directors of either of said companies has been held since July, 1891; and that they are further informed and believe, that at the present prices on pig iron, the furnaces of the companies could be profitably operated; that Coleman and a large corps of employes are kept in idleness on pretext of caring for the property, while the same is all rapidly going to waste and decay, the machinery exposed and left to rust, while Coleman and his employes are absorbing all the available funds and movable property under "names of salary and wages," in disregard of the rights of plaintiffs and other stockholders; that since the organization of said companies and principally since the organization of the new company, the defendants have realized from the sale of both real and personal property of the company several hundred thousand dollars in cash, and several hundred thousand in securities, and that no credits have been given the company for any of said moneys; no dividends declared or paid, and no credits allowed, as plaintiffs are informed and believe, by any of said defendants, upon his claim of indebtedness from

said companies, and that defendants have possession and sole access to the books of account of the companies, and therefore the plaintiffs are unable to describe more fully the items and amounts of the sales of the property of the company, consisting of town lots, pig iron, lime rock, charcoal, etc

The petition concludes with prayer that defendants be required to account, for a receiver to take possession of all the property, to manage, control and dispose of the same, or operate said manufacturing plants; that a writ of mandamus issue compelling defendants to issue stock to plaintiffs; that the judgment in favor of Mahoney, Utley and Wallach be vacated, or, if the court refuse to vacate said judgment, that its payment be postponed until the claim of plaintiff Blevins be satisfied; that plaintiff Blevins have judgment for $4600 dollars with interest and costs; that the officers of said companies, or the receiver, be ordered to deliver up to Blevins the vendor's lien notes due from him to said companies, and all other evidences of debt held by them against him, and for general relief.

On the 19th of September, the defendant corporations, through their president, the defendant R. L. Coleman, answered the petition, denying under oath the allegations of fraud and conspiracy, negligence and waste of the assets of the corporations by Coleman and his failure or refusal to comply with the contract sued on, or to issue stock to plaintiffs, and setting up affirmatively several matters of defense to the various charges and complaints aforesaid. Among other matters of defense, the answer avers that the judgment charged to be fraudulent was for an honest debt due for money lent the old company to enable it to improve its property; and that the judgment has been duly registered in Cherokee County, and is a lien upon the property of the company. That at the time of the institution of this suit, defendants were negotiating for the purpose of resumption, and were expecting to resume operations in view of the advance in the price of iron and iron products.

On the same day on which the defendants filed their answer, they moved the court to vacate the order granting the receivership, which motion was set for hearing before the judge in vacation, on the 10th of October. The grounds of this motion are: (1) The order was made without notice to defendants, and the petition shows no ground for such ex parte proceedings. (2) The petition showed no grounds for the appointment of a receiver. If plaintiffs be entitled to relief they have adequate remedy at law. (3) If any of the allegations of the petition are sufficient to authorize the interposition of a court of equity, such allegations are directed against other defendants than the defendant corporations, whose property is taken into the custody of the court. (4) It does not appear that plaintiffs have a specific interest in or lien upon the property of defendant corporations, or that such interest, if any plaintiffs have, will be injured; that plaintiffs can be protected by injunction or sequestration, and by proper bond defendants would be protected also; whereas defendants have no recourse for injuries re-

sulting to them from the receivership, save suit against plaintiff who is insolvent. (5) That defendants have negatived under oath any allegation of plaintiffs' petition.

At the hearing of this motion, Wade Bonner and Ella V. Hammond, as stockholders in the old company, intervened; and, in addition to the averments contained in the plaintiffs' petition, alleged, that by agreement on organization of the old company, the New Birmingham Iron & Improvement Company, they were to receive stock in said company free from indebtedness, in proportion of one to four; that to this they were entitled; but that the same has never been issued to them; that sufficient stock was to be issued to the creditors of the old company to satisfy the indebtedness of said company, the creditors agreeing thereto, and that said stock has never been issued for the payment of said creditors; that the defendant, R. L. Coleman, as president of said companies, conspiring and confederating with his co-defendants, the creditors of said old company, did aid and assist them in obtaining a fraudulent judgment against the said companies; that the property conveyed by the old company to the new company is liable to be levied upon and sacrificed at execution sale; that said Coleman, the president, and the directors and officers of the company still fail and refuse to carry out the agreement made at the organization of the new company, and to protect the company against said fraudulent judgment. That there has been no meeting of the board of directors of the new company for more than four years, and no effort made to carry out the organization of the company; that Coleman, assuming, by virtue of his office as president of the said companies, to contract for them, has agreed with his co-defendants, Mahony, Utley and Wallach, to pay plaintiff Blevins the sum of $4600; that said obligation has been assumed in the interest of the owners of said judgment, and that said companies owe no part of said debt; that Coleman has paid large sums of money for caring for the properties of the company; that it has been allowed to stand idle, and is fast becoming worthless, and that said Coleman is not a proper party to control said property.

The interveners pray for an order requiring the stockholders to elect officers and directors as required by law, and an order requiring said officers and directors to issue to interveners their stock in the new company, and also to issue stock for the payment of the indebtedness of the old company, according to the agreement between creditors and stockholders of said old company, and also to carry out and pay the considerations agreed on in the transfer of said property; and that the contract between Coleman, as president of said companies, and Blevins be annulled; and that the receiver theretofore appointed be continued in office, and for general relief.

To the consideration of this petition of intervention, the defendants objected on various grounds not necessary to be stated, but the objection was not sustained, and the petition, with the defendants' answer thereto, was considered in connection with defendants' motion to vacate

the receivership, and upon the hearing of said motion, on the 10th of October, by the judge in vacation, the same was overruled. At the regular term of the District Court of Cherokee County, on December 11, 1895, plaintiffs filed motion to confirm orders made in vacation, and to enter same on the records of the court. To this motion defendants filed objections, and excepted to said motion, the grounds of said motion being substantially the same as those presented in the defendants' motion to vacate the order granting the receivership, and to revoke the appointment of the receiver. The court overruled defendants' motion and sustained plaintiffs' motion, and the defendants excepted and gave notice of appeal.

On the same day, defendants filed motion to vacate the order of confirmation, based upon same grounds as former motion; the defendants also prayed the court to hear evidence as to their sworn answers and pleas in support of their motion, and made tender also, in connection with the motion, of bond to be executed by them to such payee, and in such sum as the court should direct, conditioned that the property in hands of receiver, together with the rents, hire and fruits of same, should be forthcoming to abide the decision of the court upon trial of the cause. This motion was also overruled, the judge presiding being the successor in office to the judge who in vacation made the orders objected to, and declining to hear any evidence in support of the motion, holding that the orders having been made by his predecessor in vacation were not subject to revision by the court, but must be entered upon its minutes, and to this action of the court, the defendants also excepted and gave notice of appeal, and perfected their appeal within twenty days from the day on which the court, upon the motion of plaintiffs, ordered the proceedings had in vacation be entered upon the minutes.

It appears from plaintiffs' petition that the object of their suit is two-fold: (1) to recover for the plaintiff Blevins, of the two defendant corporations and the other defendants, upon an alleged contract between him, the said plaintiff, and the said defendants, the sum of $4600, and the delivery to him of certain promissory notes of his, held by the defendant corporations; and (2) to obtain protection and relief to plaintiffs and others, as individual stockholders in said companies, through the interposition of the equitable powers of the court, against an unjust, illegal and inequitable judgment of over $600,000, obtained against said corporations in the District Court of Cherokee County in favor of the defendants, Mahoney, Utley and Wallach, by the fraud and conspiracy, as plaintiffs aver, upon information and belief, of said Mahoney, Utley and Wallach, and the president and manager of said companies, the defendant Richard L. Coleman, and the defendant Charles W. Wells, and against the alleged waste and neglect of the said Coleman in the management of the property and moneys of the said companies, and to compel the issuance to the plaintiffs by the proper officer of the New Birmingham Iron & Improvement Company of certain certificates of

stock in said company, to which the petition alleged plaintiffs are entitled by the terms and conditions upon which the property of the New Birmingham Iron & Land Company, or the old company, as that corporation is called in the pleadings, conveyed to the New Birmingham Iron & Improvement Company, called, as we have seen in the pleadings, the new company, and also to compel the issuance of certificates of stock in said company, in accordance with the further terms and conditions of said conveyance of said property, to the officers of said old company, to be delivered by them in full payment of the debts of said company to its creditors.

The interveners, in addition to the relief sought by plaintiffs, pray to be protected from the enforcement of the contract sued on by plaintiff Blevins, charging that the same was made in the interest of Coleman, and the defendants, Mahoney, Utley and Wallach, the owners of the alleged fraudulent judgment; averring that said contract was unauthorized, and the defendant corporations are not liable for one cent of the money contracted to be paid Blevins; and the interveners further pray that there shall be an election of officers for said company held according to the laws of this State, averring that there has been no election for more than four years.

Do these petitions, or either of them, considered in connection with the answers under oath of the defendant corporations, present a case in which a court, pendente lite, is authorized to take from the possession of the officers of the corporations their property, and place it in the hands of a receiver, to be held and controlled and managed and disposed of under the direction of the court? If not, then the motion of the defendants to vacate the interlocutory decree appointing the receiver and placing the property in his hands should have been sustained. It cannot be questioned, we think, that the suit by Blevins to recover money as a creditor of the defendant corporation is not one in which a receiver could be properly appointed. The plaintiff not having a lien upon the property, the law does not permit him to take it from its owners, or their agent, and place it in the hands of a stranger for the better security of his debt; and this, though there be manifest danger that the property will be lost or disposed of before the plaintiff can run an execution against it. Carter v. Hightower, 79 Texas, 136.

But it is insisted by appellees that the first section of article 1461, Revised Statutes, which authorizes the appointment of a receiver in suits between parties, or joint owners of property, where it is shown that the property is in danger of being lost, removed or materially injured, includes suits between stockholders and the directors or officers of corporations. This contention might be correct, but for sections three and four of this article, which declare when and under what circumstances receivers of the property of private corporations may be appointed. The article must be construed as a whole, and each section given operation. Observing this rule, the interpretation sought to be given to the first section of the article by appellees, we think, is erroneous; and that the

power to appoint a receiver of the property of a corporation is restricted to the cases mentioned in sections 3 and 4 of article 1461, to-wit: in cases where a corporation has been dissolved, or is insolvent, or in imminent danger of insolvency, or has forfeited its incorporated rights, and in all cases where receivers have been heretofore appointed by the usages of courts of equity.

It is apparent, we think, that the suit of neither the plaintiffs nor interveners falls within any of the first four cases enumerated in the statute; and if therefore, the appointment made in this case was authorized, it is because it is in accordance with the usages of the courts of equity. Courts of equity are slow to interfere in controversies between shareholders, or between shareholders and the officers of the corporation. The complaint of the plaintiffs and the interveners about the management of the property of the corporation, about the alleged fraudulent judgment, and as to whether the contract alleged to have been made by defendant Coleman with plaintiff Blevins should be executed, and whether Coleman is a proper and fit man for the management of the property, are all matters for the discretion of the directors of the company.

It is a part of the agreement between the shareholders of a corporation, says one of the standard writers on the law of corporations, that the entire management of the corporate affairs shall be entrusted to certain specified agents, and this includes a delegation of the power of protecting the company from injuries, and enforcing its collective rights. Each shareholder must be held to have agreed that all proceedings for the protection of the corporate property and rights shall be brought by the corporation, as an entirety, acting through its regular agents; and it is only when the corporation has been dissolved, or disabled from proceeding on its behalf, by reason of the misconduct or disability of its agents, that the shareholders may themselves proceed in chancery for the protection of their equitable rights; and, in order to maintain suit for his equitable rights, a shareholder must allege and prove that no agent of the company having the requisite authority is willing and able to act on its behalf. Ordinarily, the directors of a corporation have complete power to control its action and to decide whether it shall enter into a litigation or not. And even where the directors, or ordinary managing officers, are at fault, it does not necessarily follow that the corporation is disabled from procuring justice for itself; for the majority of stockholders in corporate meeting have supreme authority, under the charter, to manage corporate affairs, and whenever it is possible to obtain justice by removing the offending officers and electing new ones through the action of the shareholders, this remedy must be pursued. Morawetz on Private Corporations, secs. 239, 240.

While it is true that a stockholder in a corporation may maintain a suit in equity founded on a right of action existing in the corporation itself, and in which suit the corporation itself is the appropriate plaintiff, there must exist, to authorize such suit, some action or threatened

action of the directors or trustees of the corporation which is beyond their authority, or such fraudulent transaction, completed or contemplated by the managers in connection with some other party, or among themselves, or with other shareholders, as will result in serious injury to the corporation, or to the other shareholders; or where the board of directors, or a majority of them, are acting in their own interest, in a manner destructive of the interests of the corporation, or the rights of the other shareholders; or where a majority of the stockholders themselves are oppressively and illegally pursuing a course in the name of the corporation which is in violation of the rights of the other shareholders, and which can only be restrained by the aid of a court of equity. In addition to the grievances which call for and permit the exercise of the equitable powers of the court, the shareholder, before he is permitted to maintain a suit in his own name and conduct a litigation which usually belongs to the corporation, must show to the satisfaction of the court that he has exhausted all the means within his reach to obtain, within the corporation itself, the redress of his grievances, or action in conformity to his wishes. He must make an earnest, not a simulated, effort with the managing body of the corporation to induce remedial action on their part, and this must be made apparent to. the court; and, if time permits, or has permitted, he must show, if he fails with the directors, that he has made an honest effort to obtain action by the shareholders, as a body, in the matter of which he complains. And he must show a case, if this is not done, where it could not be done, or it was not reasonable to require it. Hawes v. Oakland, 104 U. S., 450.

Whether the plaintiff Blevins should recover against the corporations his money demand upon the contract between himself and the defendant Coleman, who assumed to act for and to obligate the corporations of which he was the president and manager, or whether or not the plaintiffs and the interveners may not be entitled to a mandamus to require an election of officers of the new corporation in accordance with the laws of this State, and to compel the proper officer of said company to issue certificates of stock to the shareholders of the old company to which they may be entitled under the agreement for the conveyance of the property of that company to the new, and certificates of stock also in the new company in payment of the debts of the old company. are questions which need not be decided upon this appeal. But for all other purposes for which both plaintiffs and interveners sue, we are of the opinion that their suits are not maintainable in a court of equity, for the reason that each of the petitions, that of the plaintiffs and that of the interveners, is fatally defective. Neither contains any one of the requisites prescribed by the courts of equity, both in England and America, as is shown by the eminent jurist who delivered the opinion in the case of Hawes v. Oakland, supra, for the maintainance of a suit by a shareholder in his own name, for the protection of his corporate rights. Such being the case, there was no authority for the appoint-

ment of the receiver, and the defendants' motion to vacate the order of appointment should have been sustained.

It is contended by appellants under their first assignment of error that, under the law as it now exists and as it existed at the time of the decree appealed from, there can be no appointment of a receiver by the judge in vacation. We cannot concur in this view of the law. The statute, by giving the "judge" and not the "court" the power to appoint, intends, we think, to authorize the exercise of the power both in vacation and term time. We are strengthened in this conclusion by what has been the law heretofore in this State, and by the general usage of judges, clothed with the powers of a chancellor, and by the fact that, if the power can be only exercised during the terms of the court, it will, in very many cases, be unavailing for the purposes for which it is conferred.

Nor do we agree with the contention of the appellees, that the right of appeal has been lost by the failure of the defendants to perfect their appeal within twenty days from the day on which their motion to vacate the receivership was overruled. The language of the statute providing for an appeal from an interlocutory order is, "provided said appeal be taken within twenty days from the entry of said order." This we construe to mean the entry upon the minutes of the court. There is no other entry required or contemplated by the law.

The question about which we have had doubt is, whether the compensation to be allowed the receiver for his services and the expenses incurred by him in the preservation of the property committed to his custody, should be a charge upon the property, or whether there should be judgment only for such sums against the plaintiffs, in favor of the receiver. We find the authorities somewhat in conflict on the subject; but the weight of authority, we think, is that when the appointment of a receiver is erroneously made, the proceedings are not void, and the property committed to the receiver should be charged, especially in cases where both parties are part owners of the property, with the expenses of the receivership, including the compensation allowed the receiver for his services.

The judgment overruling the motion of the defendants to vacate the interlocutory order made by the judge of the District Court for the county of Cherokee, in vacation, on the ——— day of September, 1895, upon the application of the plaintiffs in this suit, appointing J. B. Reagan receiver of the properties of the defendant corporations, is reversed; and said interlocutory order is vacated and annulled, and the appointment of said receiver is revoked, and the property in his custody returned to its owners, and said receiver will render an account of his administration of his office to said District Court; and he will be allowed, as a charge upon said property, his actual and necessary expenses, incurred in the preservation of said property, and such reasonable compensation for his services as, in the judgment of said court, he is entitled to; and for all excess of such sums so allowed, over what would

have been the costs of preserving the property had there been no receiver appointed, the court shall render judgment against the plaintiffs in favor of the defendant corporations, and said defendants shall also recover their costs in this court and in the court below, incident to this appeal, against the appellees; all other costs to abide the result of the suit.

*Reversed and receiver discharged.*

Delivered February 27, 1896.