CONTINENTAL TRUST CO. et al. v. COWART. (No. 6835.)

(Court of Civil Appeals of Texas. Galveston. Jan. 8, 1915.)

1. VENUE ☞14—PLACE OF TRIAL—PLEA OF PRIVILEGE.

A suit to rescind a contract for the exchange of corporate stock on the ground of false representations of the agent of a corporation to make contracts of exchange may be brought in the county where the representations were made and a plea of privilege of the corporation to be sued elsewhere is properly overruled.

[Ed. Note.—For other cases, see Venue, Cent. Dig. §§ 21, 27; Dec. Dig. ☞14.]

2. CANCELLATION OF INSTRUMENTS ☞31—NOTES—FRAUD—TRANSFER TO BONA FIDE PURCHASER.

A stockholder executed a note to a corporation secured by a deed of trust and by his stock as collateral. The note and mortgage were transferred to a second corporation for a valuable consideration. The stock of first corporation was exchanged for stock of the second corporation, and substituted as collateral. Thereafter the note was transferred to a third person for a valuable consideration. Held, that the stockholder was not entitled to have the note and mortgage canceled on the ground of fraudulent representations.

[Ed. Note.—For other cases, see Cancellation of Instruments, Cent. Dig. § 48; Dec. Dig. ☞31.]

3. CORPORATIONS ☞121—EXCHANGE OF STOCK—RESCISSION—REMEDY.

The remedy, if any, of a stockholder induced to exchange his stock for stock in another corporation is to rescind the transaction and recover back the stock given by him or its value.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 504, 505; Dec. Dig. ☞121.]

4. CORPORATIONS ☞121—EXCHANGE OF STOCK—RESCISSION—REMEDY.

A stockholder exchanging his stock for stock in another corporation may not rescind the trade and recover back the stock given, or its

value, without returning the stock received in exchange or accounting for its value.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 504, 505; Dec. Dig. ☜121.]

5. CORPORATIONS ☜553—MISMANAGEMENT—EVIDENCE—RECEIVER.

Where an investment company was solvent and not in any imminent danger of insolvency, though some of its investments were ill-advised, and, owing to shrinkage in land values, its assets had been greatly reduced, and the market price of its stock depreciated, but the officers acted in good faith in administering the affairs of the corporation, a minority stockholder was not entitled to the appointment of a receiver.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 2201–2216; Dec. Dig. ☜553.]

6. CORPORATIONS ☜553—MISMANAGEMENT—EVIDENCE.

A receiver of a corporation should not be appointed on the application of minority stockholders except on a clear showing that their rights imperatively demand it, and that they have no other adequate remedy, and are in danger of suffering irreparable loss.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 2201–2216; Dec. Dig. ☜553.]

Appeal from District Court, Angelina County; Lee D. Guinn, Judge.

Suit by S. J. Cowart, for himself and for the benefit of such stockholders as may join in the suit, against the Continental Trust Company and others. From a decree appointing a receiver of the corporation, defendants appeal. Reversed and rendered.

Monta J. Moore, of Los Angeles, Cal., and Jno. Lovejoy and Lane, Wolters & Storey, all of Houston, for appellants. Mantooth & Collins, of Lufkin, and Hamp P. Abney, of Sherman, for appellee.

PLEASANTS, C. J. This suit was brought by appellee, a minority stockholder in appellant corporation, for himself and for the benefit of such stockholders as might join in said suit, against the appellant Continental Trust Company, a corporation organized under the laws of the state of Arizona, and having its office and place of business in the city of Houston, Harris county, Tex., and Jonathan Lane, R. W. Thompson, J. H. Thompson, W. Strauss, J. F. Sadler, Jr., Jake Wolters, and N. R. Lynd, all of whom are alleged to be residents of Harris county, except the defendant Sadler, who is alleged to reside in Bexar county. The nature and purpose of the suit is thus stated in appellee's amended petition, upon which the hearing was had in the court below:

"This cause of action is brought against the Continental Trust Company, as a corporation, and against other defendants herein named individually and collectively, for the sum of $5,000 paid to the said defendants, officers, directors, and agents of said corporation, and for the cancellation of plaintiff's certain note for $5,000 due and payable to the American Surety & Casualty Company, and to cancel the mortgage lien on 1,600 acres of land, more or less, hereinafter more particularly described, which mortgage creates a cloud and incumbrance upon said survey of land, because of the fraudulent misrepresentations made by the officers, directors, and agents of said corporation, and for the appointment of a receiver, and, in the alternative, for the benefit of your said plaintiff in the cancellation of said $5,000 note, and lien and incumbrance upon said tract of land, and for the use and benefit of the Continental Trust Company, and for such stockholders as may join herein."

The pleadings of plaintiff are voluminous and complex, and we shall only set out such of the allegations as are necessary to show the issues presented.

After alleging the organization of the appellant corporation on or about April 10, 1911, under the laws of the state of Arizona, with its home office in said state, and its Texas office and place of business at Houston, Harris county, and having as its officers, among others, the defendants before named, it is alleged:

That during the period of the promotion, organization, and chartering of appellant corporation the American Surety & Casualty Company was organized and chartered under the laws of this state with a capital stock of $200,000, and having the defendant Jonathan Lane as its president, and several of the other defendants herein, with a number of other named persons, as directors, "and that the law firm of Lane, Wolters & Storey were the legal advisers of said last-named corporation, and were stockholders, officers, and directors in said last-named corporation, and they together with the defendants Jonathan Lane, J. R. Thompson, W. R. Thompson, and J. F. Sadler, Jr., were general promoters and managers of said corporation in its promotion, organization, and chartering, and thereafter in the management of its moneys, funds, and credits, and are such officers, directors, and managers ever since and now; that the other officers named above so far as plaintiff is informed and believes, took no active part in the management of said corporation."

It is then alleged that during the year 1912 plaintiff was induced by an agent of said defendants to subscribe for 50 shares of stock in the American Surety & Casualty Company at a price of $200 per share, the face value of said shares being $100 each; that said agent represented to plaintiff that said shares were worth the sum of $200 each, and, relying upon said representations, plaintiff purchased same and paid to defendants the sum of $5,000, and executed his note for $5,000, payable to the American Surety & Casualty Company, and secured by said 50 shares of stock which were attached to said note as collateral, and also by a deed of trust upon a tract of 1,600 acres of land in Angelina county, said land being fully described in the petition.

The next allegation is, in substance:

That in March, 1913, the individual defendants before named "as stockholders, agents, officers, directors, and lawyers" in both the American Surety & Casualty Company and the appellant corporation "illegally and fraudulently entered into a combination, contract, and agreement to acquire from the stockholders of the American Surety & Casualty Company their stock in said company in exchange for stock in the appellant corporation, said

exchange to be made upon a valuation of $160 for each $100 share of American Surety & Casualty Company stock, and $20 for each $10 share of the stock of appellant corporation; that, relying upon the representations of defendants and their agents that the stock in appellant corporation was of much greater value than stock in the American Surety & Casualty Company, plaintiff exchanged his 50 shares of stock in said last-named company for stock in appellant corporation upon the basis of value above stated."

The representations as to the value of the stock of the two corporations, and especially the representations as to the business of appellant corporation and the value of its assets, are alleged to have been false and fraudulent, and that plaintiff believing said representations to be true, made the exchange of stock as before stated, receiving in lieu of his 50 shares of stock in the American Surety & Casualty Company of the face value of $100 per share 400 shares of stock in appellant corporation of the face value of $10 per share. The said alleged false representations are charged to have been made in Angelina county by N. R. Lynd, acting for and on behalf of the other defendants, and to have been repeated and confirmed by the other defendants. The most material allegations as to the false representations of defendants are as follows:

"The said N. R. Lynd further represented to your said plaintiff that the Continental Trust Company was a legally organized and growing organization, actually engaged in doing business as a trust company, and a general money business, except that said corporation was not allowed to do a banking business; that said Continental Trust Company had assets of practically $2,000,000 in value, with a surplus and undivided profits of more than $500,000; that said corporation had been paying quarterly dividends of 5 per cent., making a dividend of 20 per cent. per annum on the par value of the stock, or 10 per cent. annual interest or income on the investment of $200 for $100.

"Said Lynd and other defendants herein represented to plaintiff that all of the assets of the Continental Trust Company were of the most choice character; that the loans it had made and those it had advanced on security represented by real estate were advanced on such real estate at a 50 per cent. valuation of its real value, and consisting of first mortgage on real estate, as secures that part of its assets represented by real estate loans; that said Continental Trust Company had ample cash on hand and in bank to successfully carry on a general trust business, and that, where loans were made or money advanced out of the funds of the company, it was invariably secured by real estate at not more than 50 per cent. of its cash market value, or in bonds or stock which were gilt-edge, and of first class or highest class of commercial paper; that said dividends so paid as above set out and had been paid and will be paid by said Continental Trust Company out of the profits arising from the transaction of its business and not otherwise.

"The said N. R. Lynd and the said defendants herein further represented to this plaintiff that, if he would exchange his stock in the American Surety & Casualty Company at 20 per cent. discount of its par value, and take stock in the Continental Trust Company at $2 for $1 of its par value, that the excess in valuation of the Continental Trust Company's stock would more than repay him for the depreciation of his stock in the American Surety & Casualty Company, and that so soon as the stock was issued in the Continental Trust Company said Continental Trust Company would become the owner of the note plaintiff had theretofore executed to the American Surety & Casualty Company, and that said Continental Trust Company would at once release the mortgage on the land in Angelina county above set out, and would take as sole security for the $5,000 balance due for stock so purchased by him for the stock in the Continental Trust Company, and that the dividends declared and to be declared as a stockholder in Continental Trust Company would more than pay the interest due and to become due on the said note for $5,000, and that said interest would be canceled by said dividend and would leave the plaintiff a balance for the extinguishment of said note. * * *

"Plaintiff further avers that, in addition to the statements so made by said N. R. Lynd in the town of Lufkin, county of Angelina, state of Texas, all of which he believed and upon which he acted thereafter in the closing of said contract, the said defendants Jonathan Lane and W. Strauss did by telegram directed to the plaintiff at Lufkin, Angelina county, Tex., from the city of Houston, invite him to come to Houston, at their expense, for a further discussion of the question of exchange of stock, and that, acting upon said invitation, plaintiff did go to Houston on or about the 15th day of March, 1913, and there did meet the said defendants Jonathan Lane and W. Strauss, and they did repeat practically the same statements, representations, and declarations made by the said N. R. Lynd at Lufkin to your said plaintiff, and did notify your said plaintiff that they did send the said N. R. Lynd as agent for Continental Trust Company and other defendants to Angelina county, for the purpose of seeing your said plaintiff and making such representations to him as were stated to them by your said plaintiff, and they and each of them, representing the Continental Trust Company, did further represent that the stock of the Continental Trust Company, instead of being worth $21.50 a share of $10 par, as represented by the said N. R. Lynd, was really worth $23.40 a share of $10 par, and especially represented to this plaintiff that all of the assets of the Continental Trust Company were amply secured where loans had been made, and that certain real estate was owned by the Continental Trust Company and carried on its books as an asset at 50 per cent. of its cash market value; that said defendants each and all of them represented to this plaintiff and promised him that, if he would exchange his stock in American Surety & Casualty Company at 20 per cent. discount of its par value, and take stock in the Continental Trust Company at $20 per share for share at $10 par value, that the exchange in valuation of the Continental Trust Company's stock would more than repay him for the depreciation of his stock in American Surety & Casualty Company, as was represented by the said N. R. Lynd, and that upon the representations made by the said N. R. Lynd, which plaintiff believed and acted upon, and as verified by said Jonathan Lane and W. Strauss, he did agree to take, and did receive, 400 shares of the capital stock of the Continental Trust Company's stock of the par value of $10 per share, for which the plaintiff paid $20 per share, in exchange for his 50 shares of the stock in the American Surety & Casualty Company of the par value $100, for which he paid $200 per share, and the said American Surety & Casualty Company did then and there deliver to the Continental Trust Company and the defendants herein the $5,000 note theretofore executed to the American Surety & Casualty Company, or their agents and representatives, Barnett, Strauss & Co., which the American Surety & Casualty Company then held and

owned, which said note so received by the Continental Trust Company was at the time of the filing of this suit on February 27, 1914, held and owned by the said Continental Trust Company in payment for said stock, and that thereafter the said Continental Trust Company did issue to this plaintiff the said 400 shares of the stock of the Continental Trust Company, which 400 shares of stock was delivered by your said plaintiff to the officers, agents, and directors of the Continental Trust Company as security for the payment of said note of $5,000.

"Plaintiff further avers that the said Continental Trust Company, in addition to the security for said note for the stock of the said Continental Trust Company, they are now in violation of their said contract and agreement with your said plaintiff to discharge the obligation against the said land, as hereinbefore stated, asserting ownership thereto, and pretend to hold a mortgage on his said land above mentioned, and are asserting a lien thereon in payment for said note, and that said mortgage constitutes a pretended lien upon the title to plaintiff's said land and a cloud upon plaintiff's title to said land in Angelina county, Tex.

"Plaintiff further avers that said note was given in payment for said stock in the American Surety & Casualty Company, as hereinbefore alleged, and after the exchange of stock, as charged herein, said note was by contract between plaintiff and defendants allowed, transferred, and delivered to defendant Continental Trust Company, as its property for and representing the amount of $5,000 of the purchase money for stock in the Continental Trust Company, for which stock was issued to the plaintiff in the Continental Trust Company as hereinbefore stated, which stock so delivered and sold was not for money paid, labor done, or property actually received, as is required by article 12, § 6, of the Constitution of the state of Texas, but that said stock was so issued on the execution of said note in payment for said stock in said corporation as herein charged, and that said note is void and of no effect.

"This plaintiff further avers and shows to the court that, as a matter of fact, the representations so made to him by the defendants, as hereinbefore set out, were untrue, and knowingly and fraudulently made for the purpose of inducing this plaintiff to invest his money in stock of the said Continental Trust Company when it was known to said Continental Trust Company and to its officers, directors, and agents at the time said statements were made that said representations were untrue and false, and that the assets of said Continental Trust Company were not, as represented to the plaintiff, gilt-edge and of high class and dividends paying; that, instead of the assets of the said Continental Trust Company being high-class, gilt-edge securities, the funds of said company had been by its directors, officers, and agents dissipated, invested in notes and bonds secured by second mortgages on real estate in various counties of the state of Texas, and that parts of the assets of said company at that time consisted, and does now consist, of securities in large bodies of lands heavily mortgaged and rendered undesirable, and unsalable and depreciated in value because of such incumbrances, and that said notes and bonds held by said corporation, Continental Trust Company, so secured by said liens on equities in said lands, were practically worthless, and of no value; that, instead of the stock of said corporation being worth $21 a share for $10 par, said stock at that time and at all times mentioned herein was worth not more than $5 or $6 a share, and that said stock was not worth more than that amount on the market, and is now worth much less on account of the mismanagement and fraudulent conduct of said corporation, Continental Trust Company, and its said officers, directors, and agents; that the stock of said corporation was then,

ever since, and is now practically worthless; that it is freely and publicly offered on the public market of the city of Houston, and elsewhere, where its officers and their management are best known at $4 per share of $10 par, and no buyers therefor; that all of the time when said defendants were selling and attempting to sell to this plaintiff stock in said Continental Trust Company they were fraudulently mismanaging the affairs of said corporation, in that they were investing the funds of said corporation in part in notes belonging to, and purchased from, officers and directors in said corporation, and, as plaintiff believes, said notes were sold to the said Continental Trust Company for money received at their face values, with interest accrued, without recourse on seller.

"Plaintiff further avers that said defendant, its officers, directors, and agents, purchased land from the defendants herein for said Continental Trust Company at fictitious values, on which there was a first mortgage practically to the extent of the reasonable cash market value of said lands at the time, and paid the defendants herein the difference between the amount of said mortgage debt and the price at which they were sold, which was far in excess of the value of said lands, thereby depreciating the assets of the Continental Trust Company and increasing the assets of the stockholders so selling said land."

The petition then sets out in detail and at great length a number of transactions, in some of which the appellant corporation invested money by way of loans, and in others exchanged stock for land or equities in land, and in all of which it is alleged that the lands so purchased or accepted as security for loans were taken at a sum largely in excess of their actual value.

It is further alleged:

That the taxes due by appellant corporation for the year 1913, amounting to $25,000, have not been paid because the appellant corporation, "being insolvent, was unable to pay the same or any part thereof," and "that taxes will soon be due for the year 1914, and will amount to something like the further sum of $25,000, which, plaintiff charges, cannot be paid because of the condition of the assets of said corporation, and that the lands upon which defendants have any lien or deeds or right of property are each and all incumbered with first mortgage liens to within 25 per cent. of their cash market values, and defendant company has no funds or assets by which it can redeem the first mortgage bonds, making it impossible to realize any cash or available assets for the payment of taxes and the discharge of its monied obligations, and that defendants are not disposed to protect same."

This is followed by allegations, in substance:

That appellant corporation has issued time certificates of deposit to the amount of $357,025, and that, in addition to the taxes before mentioned, it has bills payable to the amount of $368,000, and "that said debts are now due and payable, and demand has been made for payment, and that the assets of the company in the main are obligated to the discharge of these obligations, notwithstanding their assets, as hereinbefore charged, have been incumbered by first mortgage liens to the extent hereinbefore charged."

It is further alleged that the funds of the appellant corporation have been fraudulently dissipated by the payment of large salaries to its officers and attorneys, the individuals named herein; that J. H. Thomp-

son received, as president, the sum of $10,-000 per year; J. F. Sadler the sum of $10,-000 per year; and that Jonathan Lane, as attorney for said corporation, has been paid the sum of $5,000, and since he became president in November, 1913, the further sum of $3,600; and that, in addition to the salary paid Mr. Lane as attorney, the firm of Lane, Wolters & Storey was paid $2,500 per year. The remaining allegations and prayers of the petition are as follows:

"Plaintiff furthers avers that, while the Continental Trust Company is a going concern, its assets consist of bills receivable that are, in the main, of long standing and uncollectible, in that, as hereinbefore charged, they are due by persons and corporations who refuse to pay, and are not collectible by law, except in so far as they are secured, and in cases where they are secured the securities have depreciated in value by the management by defendants until they are worthless, as in case of note for $297,617 due by State Land Company, which is secured by $180,220 of the stock of Continental Trust Company at par value, which is offered on the public markets of Houston, where the Continental Trust Company, its officers and directors and their management, is best known, in shares of $10 par value, for which plaintiff paid $20, at the insignificant sum of $4 per share, and no buyers, as well as the lands claimed by the State Land Company, all being in large bodies, against which are first mortgage liens to the full extent of 75 per cent. of the cash market value of such lands, with no available assets of Continental Trust Company to redeem the said lands from said first mortgage liens, wherefore plaintiff charges that said Continental Trust Company, because of the mismanagement by the officers, directors, and agents of said Continental Trust Company, is, as they intended it should be, always a going concern to enable said officers, directors, and agents to go after the balance of its assets; that plaintiff has not pleaded the several transactions in this petition charged with more detail and in their consecutive order, to show the mathematical precision with which defendants administered the affairs of the Continental Trust Company, to their use and benefit, for want of the detailed information, which exists only within the knowledge of the several defendants and the books, files of papers, and correspondence by which your said plaintiff could get a line on their several transactions, all of which information has been denied plaintiff, and the defendants being possessed solely of this information, they being the only officers, directors, and agents who took advantage of knowing the affairs and workings of said officers and directors, except possibly S. F. Carter, who was at a late date made one of the vice presidents and directors, whom, plaintiff is informed and believes, resigned his position or refused to act, because of the manner in which defendants were conducting the affairs of this corporation, and whom, plaintiff believes, will divulge what he may know when properly approached, but for want of time such information has not been acquired.

"Plaintiff furthers avers that, by reason of the aforesaid unlawful and fraudulent acts of said defendants as officers, agents, and directors of said corporation, Continental Trust Company, they have caused the loss of its assets, business, profits, and property, and have caused debts to be incurred against it as aforesaid, and that thereby its shares of stock have been reduced to a nominal value, and said corporation is caused to be, and is now, wholly insolvent, and in imminent danger of insolvency, and that the assets of said corporation are continually being further dissipated by the control and management by said defendants, as hereinbefore charged, and will be until such management and control has been wrested from them by some legal process that is able to cope with their purposes, intentions, and ability to further their schemes; that the object and purpose of said corporation, acting through its officers and directors, has been thereby entirely destroyed and abandoned by its said officers and directors, in so far as its usefulness can serve any purpose, and that to-day the said company serves no useful purpose, save as a cloak behind which its said officers and directors can and do defraud said corporation and its stockholders, and especially the plaintiff herein as a minority stockholder, of the natural and legitimate profits of the business for which said corporation was organized, and in which it was thought to be engaged up to the time of the development of the conduct of its said officers and directors; that the said officers and directors and defendants herein are intending to continue their said course of dealing, whereby they are daily appropriating to themselves the benefits of the assets of said corporation, together with its business and property, while charging against it the expense connected with its pretended operation, which expense in the pretended operation of said business, the plaintiff here charges, will not be less than $25,000 per year, in addition to the taxes and government dues that are necessarily incident to the continuation of the operation of said corporation in manner and form as hereinbefore charged.

"Plaintiff further charges that, if the policy of the officers, directors, and agents of the Continental Trust Company and the management of its properties, assets, funds, moneys, and credits from time to time since its organization were not done and performed unlawfully, willfully, or maliciously for the purpose and intention as herein charged against defendant and each of them, then plaintiff charges that the defendants and each of them have knowingly neglected, failed, and refused to give such consideration and attention to the administration of the properties, moneys, and funds of the said Continental Trust Company, and have allowed its properties, moneys, funds, credits, and assets to be so dissipated, transferred, depreciated, and destroyed by their willful neglect and appropriated certain of its assets to their own use and benefit in salaries in amounts herein named, and in appropriating certain benefits to said defendants, officers, directors, and agents in purpose, manner, and form that they and each of them are individually, jointly, and severally liable to your said plaintiff and the Continental Trust Company, and other stockholders and creditors of said corporation, for the value of the loss sustained by the Continental Trust Company and the depreciation of its capital stock, and for which your said plaintiff for himself brings this suit and asks judgment for the cancellation of said contract for the stock of the said Continental Trust Company, and for judgment against the defendants and each of them jointly and severally for the sum of $5,000 cash paid for the stock in the Continental Trust Company, and for the cancellation of your said plaintiff's $5,000 note due and payable to the American Surety & Casualty Company, and transferred to the Continental Trust Company, and now owned and held by said Continental Trust Company, and for the cancellation of the deed of trust now existing against the lands of your said plaintiff, as hereing described, which constitutes a cloud and incumbrance upon the title thereto and impairs its value, and for the appointment of a receiver, as will more fully hereinafter appear.

"Plaintiff further charges that he has in person and through his legal representatives asked for permission to investigate the books and assets of said corporation in order to determine what his legal rights are with respect to the interest which he holds in said corporation, and that the request has been refused and insinuations of ignorance and superstition charged against this

plaintiff because of his demand, which plaintiff charges was treated with absolute contempt on the part of said officers and directors of the said Continental Trust Company in charge of the books, papers, and assets of the said company.

"Plaintiff further charges that he had made due and legal demand for the delivery of his note because of the fraudulent conduct of the said defendants in its acquisition, which demand has been refused, and that to make an additional demand for the payment of the $5,000 cash paid on the stock of the said Continental Trust Company in view of the acts and conduct of the said defendants, as hereinbefore charged, and upon his demand for an investigation of the affairs of said corporation, would be placing your said plaintiff in a position where he would be further subjected to the indignities that were placed upon him and his representatives in their demand for such investigation. Plaintiff here now tenders back to the defendant Continental Trust Company the stock in said company issued to him or for him as heretofore alleged, and as he has done theretofore.

"Plaintiff further charges that the ordinary suit without any auxiliary process would enable the defendants herein to further pursue their policies for the purpose therein stated, as heretofore alleged, for a sufficient length of time to absolutely destroy the remaining assets of said corporation, and their ends and aims would be entirely consummated, in that they would have exhausted the assets, moneys, and funds of said corporation, and appropriated them to their own use and benefit, and therefore it is necessary that a receiver be at once appointed to take charge of all of said books, notes, accounts, deeds, bonds, evidences of indebtedness, and, in short, all and singular the property rights in whatever form or substance they may exist, and, unless such equitable powers are extended, your said plaintiff would suffer irreparable loss for which he has no adequate remedy at law.

"Plaintiff says that in case he is mistaken in his petition for judgment for damages for $5,000 for cash money paid for stock in the American Surety & Casualty Company, and exchanged for stock in the Continental Trust Company, then he shows and says that he, as a minority stockholder of the Continental Trust Company, sues for himself to cancel a note for $5,000 secured by mortgage on 1,600 acres of land in Angelina county, Tex., and to cancel said mortgage as an incumbrance on the title of his land, which greatly depreciates its value, which note and mortgage were procured by defendants through fraud, and further for the use and benefit of himself and for all other stockholders in said Continental Trust Company who desire to join herein, and seeks to recover from defendants certain moneys, funds, and credits, property of said corporation fraudulently and unlawfully appropriated and mismanaged, and for damages to said corporation resulting from the fraudulent acts of its said officers, directors, and agents, and for an accounting by them for moneys, funds, and credits received by them and appropriated to their own use and benefit, and for the forthwith appointment of a receiver therefor, and now here adopts that part of this petition setting up and pleading the unlawful acts, conduct, and management of the moneys, funds, and credits and property of the Continental Trust Company as herein charged, in so far as it may be applicable, and avers and says further that the appointment of a receiver forthwith is urgent and necessary to prevent further course of the administration of the affairs of said Continental Trust Company in manner and form as herein charged, and to prosecute this suit and collect, if possible, the various sums of money due to Continental Trust Company, and to provide funds, if possible, to protect the assets of said company against the foreclosure of first mortgage liens and sale of the land thereunder, so that said company may realize on whatever equities, if any, may exist in behalf of said Continental Trust Company.

"Plaintiff further shows to the court that the defendants have each and all heretofore filed their answers herein, and that further service is not necessary.

"Premises considered, plaintiff prays, first, for judgment for his said damages in the sum of $5,000 for money paid for the capital stock of said corporation, as herein charged, and for a cancellation of his said note for the sum of $5,000, and for a cancellation of the mortgage lien and incumbrance upon said plaintiff's real estate, situated in Angelina county, as described in said mortgage, and for the appointment forthwith of a receiver to take charge of the assets, funds, moneys, and credits belonging to the Continental Trust Company, or in which they have an interest, right, or title, and for all such other, further, general, and special relief as in law or equity your said plaintiff may be entitled to.

"Plaintiff further prays, in the alternative, that in the event plaintiff should be mistaken in that portion of his petition wherein he claims damages for money paid for the capital stock of said corporation, as herein charged, then he prays further that a receiver be appointed forthwith for the said corporation, the Continental Trust Company, with the usual and customary bonds delegated to receivers of corporations and that the defendants, officers, directors, and agents of said corporation be required to surrender to said trustee the property, moneys, funds, books, files, evidences of any and all assets, rights, titles, or interest in any property to which said corporation may or will be the legal or equitable owner, and that said defendants be restrained from making any disposition of its property or any contracts concerning same, and from collecting or receiving any moneys, funds, or things of value due to said corporation, pending the receivership, and that upon a final hearing the said defendants, officers and directors of said corporation, be required to account for, and pay over, all moneys and property of said corporation that have come into their hands by virtue of their trust relation with said corporation, and that said plaintiff recover on behalf of said corporation from the said defendants, officers, directors, and agents, the various sums of money and damages herein alleged to be due said corporation by them respectively, with legal interest thereon and for reasonable attorney's fees, and all costs of this suit, and, if need be, as under the direction of this honorable court, for a dissolution and winding up of said corporation, and for such other, further, and different orders, decrees, judgments, and relief as your said plaintiff may be entitled to for himself and for the benefit of the said corporation under his said pleading, and in duty bound will ever pray."

This petition was verified by the affidavit of the plaintiff that he believed the allegations and statements contained in the petition were true and correct.

Upon presentation of the petition to the judge of the district court of Angelina county, the application for appointment of a receiver was set down for hearing, and notice thereof issued to defendant corporation. In response to said notice, said defendant appeared and filed a plea of privilege to be sued in Harris county, and, subject to said plea, filed an answer under oath which contains a detailed statement of the organization of the company and each and all of the transactions complained of by plaintiff, and specifically denies each of the allegations of fraud, misrepresentation, and wrongful and fraudulent dissipation of the assets of the

173 S.W.—38

corporation by its officers. It also specifically denied the allegations of the insolvency of the corporation or that it was threatened with insolvency.

Before the hearing on the application for the appointment of a receiver a number of stockholders of the company, who together owned only a small portion of the capital stock of the corporation, which they had obtained by exchanging therefor stock held by them in the American Surety & Casualty Company, intervened in the suit and adopted the allegations of plaintiff as to misrepresentation of defendant's agents of the value of stock in the defendant corporation, and also the allegations as to the fraudulent mismanagement of the company, and joined in the prayer for the appointment of a receiver.

The hearing in the court below was upon the sworn pleadings and upon oral testimony and affidavits of witnesses, and resulted in a judgment appointing a receiver to take charge of and administer the affairs of appellant corporation. It would serve no useful purpose to set out in detail or discuss at length the testimony adduced upon the hearing.

[1] Upon defendant's plea of privilege we think there is evidence to support appellee's contention that N. R. Lynd was the duly authorized agent of appellant in making the contract for the exchange of stock as alleged in the petition, and that some of the material representations upon which appellee and interveners relied were not true. These representations having been made in Angelina county, a suit to rescind the contract of exchange could be brought in that county. Such being our conclusion, we are of opinion that the trial court did not err in refusing to sustain appellant's plea of privilege. Trinity Valley Trust Co. v. Stockwell, 81 S. W. 793.

[2] Upon the other questions presented we think there is no evidence to justify the order appointing a receiver. The undisputed evidence shows that the $5,000 note executed by appellee in favor of the American Surety & Casualty Company was not given in payment of stock of said company, but was given for money loaned appellee by said company some time after he had purchased and paid for his stock. This note, which was secured by a deed of trust upon the 1,600 acres of land described in the petition, and also by shares of stock in the company, was transferred by that company to appellant corporation for a valuable consideration. At the time of the exchange of stock between appellant and appellee by agreement of the parties the stock in appellant corporation was substituted as collateral for said note in lieu of the stock in the American Surety & Casualty Company, which was transferred to appellant. Some time prior to the bringing of this suit this $5,000 note was for a valuable consideration transferred by appel-

lant to the Guarantee Life Insurance Company and is now the property of said company, and suit has been instituted thereon against appellee. Under these facts appellee shows no right to have said note and mortgage canceled.

[3, 4] If he is entitled to any relief in the matter of his exchange of stock, he has only the right to a rescission of said trade and to recover back the stock given by him, or its value, and could not do this without returning the stock received by him or accounting for its value.

[5] The evidence is not sufficient to sustain appellee's allegations of fraud in the management of the business of the appellant company, nor the allegations that the company is insolvent, or in imminent danger of insolvency. The evidence does show that some of the investments of the company were ill-advised, and, owing to the shrinkage in land values during the past two years, the value of the company's assets has been greatly reduced and the market price of its stock depreciated, but its assets are still in excess of its liabilities. The larger portion of its indebtedness is not due and none of its creditors are shown to be pressing it for payment of their debts, and none of them have joined in this suit asking for appointment of a receiver. It is shown that the taxes for 1913 had not been paid because the appellant claimed its assessment was excessive, and was endeavoring to have same corrected, and, when this was done, would pay its taxes. Under its present management the salaries of its officers have been greatly reduced. There is nothing in the testimony to justify the conclusion that the officers of the company are not in good faith administering its affairs for the best interest of all the stockholders, or that the interests of the stockholders and creditors would be subserved by taking the management of the affairs of the company from the hands of the officers selected by those holding the great majority of its stock.

[6] It is well settled that the plaintiff and interveners, suing only as stockholders, were not entitled to have a receiver appointed for the appellant corporation if they had established all of the allegations of the petition. Cattle Co. v. Bindle, 5 Tex. Civ. App. 18, 23 S. W. 819; Land Co. v. Blevens, 12 Tex. Civ. App. 410, 34 S. W. 828; Investment Co. v. Crawford, 45 S. W. 738. No such imperative necessity for the appointment of a receiver in order to protect the rights of plaintiff and interveners as minority stockholders is shown by the allegations in this case as was shown in the case of Falfurrias Irrigation Co. v. Spielhagen, 129 S. W. 164, and that case does not sustain appellee's contention that upon the facts of this case the trial court was authorized to appoint a receiver.

These conclusions require that the judgment of the court below appointing the re-

ceiver be reversed, and judgment be here rendered that the application for a receiver be refused, and it has been so ordered.

Reversed and rendered.