The Espuela Land and Cattle Company, Limited,
v. John Bindle et al.

No. 1628.

**1. Receiver of Corporation—Insolvency as Ground of Appointment.**—Article 1461 of the Revised Statutes, providing that a judge of any court of competent jurisdiction may appoint a receiver for an insolvent corporation, does not empower a stockholder or lien creditor of an insolvent corporation which is still a going concern to have a receiver appointed to take charge of the entire assets and convert them into money for general distribution, on the sole ground of insolvency.

**2. Same—Equitable Grounds.**—The application of a few persons owning comparatively small interests in an insolvent but going corporation is not sufficient to induce a court of equity to appoint a receiver therefor, and subject its property to speedy sale in a time of great financial stringency.

Appeal from Wilbarger. Tried below before Hon. G. A. Brown.

*Coke, Tucker & Coke,* for appellants.— 1. A court of equity has no authority to wind up a corporation because insolvent, unless such authority is expressly conferred by statute. High on Rec., secs. 287–289, 292; French Bank case, 53 Cal., 550, 551; Denike v. Lime Co., 80 N. Y., 605; Treadwell v. Manf. Co., 7 Gray, 399; Wait on Insolv. Corp., secs. 172, 174; Strong v. McCogg, 13 N. W. Rep., 898; 64 Am. Dec., 485; 76 Am. Dec., 512, and note; 20 Am. and Eng. Encycl. of Law, 57, 270; 5 N. E. Rep., 316.

2. The appointment of a receiver is an ancillary remedy, and can only be made in a case where there is, independently of the prayer for a re-

ceiver, a cause of action.    20 Am. and Eng. Encycl. of Law, 17; French Bank case, 53 Cal., 553.

3. There is no statute in Texas conferring upon any court the authority to wind up a corporation at the suit of a creditor or stockholder, because insolvent.    The Texas statute on the subject of receivers does not confer such authority; it creates no new cause of action, but simply points out those cases in which a receiver may be appointed when, independently of the statute, there exists a cause of action.    Sayles' Civ. Stats., art. 1461; French Bank case, 53 Cal., 551–554; Strong v. McCogg, 13 N. W. Rep., 898–901; Denike v. Lime Co., 80 N. Y., 609.

4. Insolvency alone is not ground for the appointment of a receiver. High on Rec., secs. 7, 8; Wait on Insolv. Corp., sec. 178; 20 Am. and Eng. Encycl. of Law, 19; 80 N. Y., 609.

*John W. Wray,* for appellees.—1. The petitions of the preferential shareholders and of the debenture holder were bottomed upon the idea of insolvency or imminent danger of insolvency of appellant.    Wait on Insolv. Corp., sec. 375; Masters v. Ins. Co., 6 Daily, 455; Sayles' Civ. Stats., sec. 1470g; Miner v. Ice Co., 53 N. W. Rep., 281.

2. If it transpired that the business for which appellant was incorporated (the pecuniary gain of its stockholders) is impossible of attainment; if circumstances have occurred which render it impossible to continue to carry out the purposes for which appellant was formed, with profit to its stockholders, it is the duty of its managing agents to wind up its affairs; and in the absence of such action by them, a court of equity, at the instance of a minority of the shareholders, will wind it up.    2 Beach on Corp., sec. 783b; Wait on Insolv. Corp., sec. 367; Miner v. Ice Co., 53 N. W. Rep., 281; Benedict v. Co., 23 Am. Rep., 489, 490.

3. The statute relating to the appointment of receivers, where corporations are insolvent or in imminent danger of insolvency, is ample authority for appellees' procedure and the action of the court in appointing a receiver.    1 Sayles' Civ. Stats., art. 1461 (3); Bank v. Tile Co., 4 N. E. Rep., 851.

STEPHENS, ASSOCIATE JUSTICE.—This appeal is from an interlocutory order appointing a receiver to take charge of and convert into money, for distribution among the creditors and stockholders of appellant company, all its assets in the State of Texas, which included the entire assets, except a little office furniture in the city of London.    The complaining litigants in the court below were John Bindle, who filed the original petition in July last, as the owner of ten shares of preference stock in said company; A. M. Britton, who intervened as the owner of certain other shares; and Walter Katte, who intervened as a lien creditor.    Of these, Britton was the moving and controlling spirit; though Bindle, his Ger-

man cook, to whom, for a nominal consideration, he had assigned the ten shares of stock, preceded him one step in the litigation, while just behind him came his brother-in-law, Katte, of New York.

At the hearing of the motion for the appointment of the receiver, it was developed that nearly ten years ago appellant company was formed under the Companies Acts of Great Britain, to acquire by purchase and to operate the cattle ranch in the Pan Handle of Texas then belonging to the Espuela Land and Cattle Company of Fort Worth, a Texas corporation; which was accordingly done. The Texas company being burdened with a debt of about $1,000,000, through the efforts of Britton, who was largely interested therein, was enabled to transfer to the London company, free of encumbrance, its entire herd of cattle, consisting of about 35,000 head, besides horses and other personalty, and also its grazing lands (subject to the lien for purchase money thereon), consisting of about 400,000 acres. The authorized capital of the new company was 40,000 shares of preference stock, of which about 26,000 were actually issued, and 60,000 ordinary shares, of which 30,000 were actually issued; the face value of each of the shares being £5. There were afterwards issued, as a means of raising money for the concern, 26,000 prior lien debentures, and nearly 100,000 income debentures. The annual interest on the latter was payable only out of the net income, and was cumulative; and the time and manner of enforcing the collection of both principal and interest were left largely to the discretion of a majority of the debenture holders. These securities, as well as the preference shares, were held mostly by Englishmen, and were declared to be a lien, in the order named, on the entire assets, subject to the mortgage on the lands. Katte and wife owned three income debentures, of the face value of £1000 each, and two prior lien debentures, of the aggregate face value of £60.

It was further made to appear, that the London company had substantially the same amount of assets, though of reduced value, as in the beginning, with the debt evidenced by the debentures superadded; that no dividend had ever been paid to stockholders; that the stock, whether preference or common, was of little or no value; that the debentures had several years to run; that all interest on the prior lien debentures had been paid; that by their terms none was payable on the income debentures, for want of a net income; that the foreign company had all the time been under the management of a board of directors at London; and although in the beginning Britton was made managing director in America, that he did not long hold that position, but had for several years been unable to exert any potential influence in the management of the company.

The order appointing the receiver rests on these conclusions of the trial court:

" 1. I find, as a matter of fact, that the defendant corporation is, and was at the institution of this suit, insolvent.

" 2. Plaintiff, John Bindle, and intervenors, Britton and Katte, are, and were at the institution of this suit, shareholders and owners in said company.

" 3. That the intervenors, Britton and Katte, are and were lien creditors of defendant company. [This finding as to Britton is admitted to be a mistake.] I therefore decide the law to be in favor of plaintiff and intervenors, and that they are entitled to have a receiver appointed of and for the defendant, and it is accordingly so ordered."

While it is not very clear to us that the fact of insolvency was established, we are of opinion that we would not be warranted in disturbing the finding on that issue. The question then arises, can a stockholder or lien creditor of an insolvent corporation which is still a going concern, have a receiver appointed to take charge of the entire assets, and convert the same into money for general distribution, on the sole ground of insolvency? While the pleadings of appellee abound with allegations of unprofitable management on the part of the great majority of the company and the board of directors, without any hope of a change for the better, we think the case developed at the hearing is fully covered by the above question, and was so construed by the district judge, as from his conclusions seems manifest.

The answer to this question involves a construction of article 1461 of our Revised Statutes, which provides, in substance, that any judge of a court of competent jurisdiction may appoint a receiver in case where a corporation is insolvent. This question has never been directly adjudicated in this State, that we are aware of.

Statutes of identical import with ours have been construed by the Supreme Courts of California and Indiana; but the decisions seem to be directly in conflict. French Bank case, 53 Cal., 553; Bank v. Tile Co., 4 N. E. Rep., 851.

In the former case it is said: " There is, of course, no such thing as an action brought distinctively for the appointment of a receiver; such an appointment, when made, is ancillary to or in aid of the action brought." It was there held, that the statute providing for the appointment of a receiver where a corporation becomes insolvent, in the absence of more explicit legislation, did not " confer upon a private person, either as stockholder or creditor, the right to maintain an action to dissolve a corporation upon the ground that it was insolvent, or to obtain relief by seizing its property out of the hands of its constituted management, and placing it in the hands of a receiver." In the latter case the opposite conclusion seems to have been reached. We can discover no difference in the statues, except that that of California limits the power of appointment to the court, or judge thereof, in which an action is pending, while the Indiana statute provides generally that the receiver may be appointed

by the court, or the judge thereof in vacation. Ours provides for the appointment by any judge of a court of competent jurisdiction.

We deem this difference unimportant, and are of opinion that the better reason is with the California decision. Mr. Spelling, in his work on Private Corporations, volume 1, section 851, cites a case from Colorado as being in line with the California case, but it is not accessible to us. We see nothing in our statute to indicate that the Legislature intended thereby to so change the whole scope of receiverships as to convert a merely auxiliary proceeding into a primary object of litigation. The seventeenth section of this very Act of 1887 expressly provides that a stockholder may have his action against the company, and may have a receiver appointed as in ordinary cases. Why this qualifying provision, " as in ordinary cases," if insolvency be sufficient in any case ? According to our construction, unless a stockholder or creditor who seeks to place in the hands of a receiver, for sale and distribution, the assets of an insolvent incorporation which is still prosecuting its charter purposes, can show that his interest as such stockholder or creditor requires the appointment to be made, the application should be denied.

There is no statute in this State which empowers a stockholder or creditor to bring a suit to wind up an insolvent going corporation. No such case is provided for in chapter 5 of the Revised Statutes, on the subject of the dissolution of private corporations. It has been decided since this statute was enacted, that insolvency does not work a dissolution. Bank v. Sachtleben, 67 Texas, 421.

To appoint a receiver to sell all the assets of such corporation, and distribute the proceeds of sale among creditors and stockholders, is to do indirectly what the law has not authorized to be done directly. It can be lawfully done only where the interests of creditors or shareholders of right require it to be done, according to well established principles. So far as appellees sought relief as shareholders, they made the usual case only of a very small minority endeavoring, through the court, to control the action of the majority pertaining to matters within the scope of the charter powers. That the affairs of a private corporation are liable to be managed by the majority against the wishes, and even the interests, of a minority, is one of the ordinary risks of such ventures, which must be held to have been within the contemplation of each incorporator or his assigns. In the absence of legislative enactment to that effect, the courts should not undertake to administer corporate estates, but leave them in the hands of a majority of the owners so long as they proceed lawfully under the charter, though foreigners they be, who have discarded their sole American director.

As creditor, appellee Katte presented a very little, if any, stronger case. Of the prior lien debentures, which were a first lien on the personal estate, he owned £60 only. Debentures of this class were not due and were

amply secured, with all interest paid up. If they were threatened with loss or impairment, it was certainly very remote. The income debentures did not place the holders in a materially better position than did preferential stock, to which they bore a striking similarity. The interest was payable only out of net profits, and the collection of the principal as well as interest was largely, if not entirely, dependent on the will of the majority of the holders, and hence was not payable when the proceeding below was had. Provision was made for debenture holders to assemble and act very like shareholders. The number of these debentures held by Katte was small, compared with the whole number outstanding. By their terms, as already seen, a condition was imposed upon the holder of being governed by the will of the majority, which made his attitude similar to that of a minority stockholder seeking redress against the lawful action of the majority. He accepted them cum onere, and can not invoke the aid of the courts to give him a better class of paper than he bargained for.

Viewing the whole case as an equitable proceeding for the appointment of a receiver, it seems to us that it was not sufficiently strong to induce a court of equity to subject to a speedy sale, as prayed, this vast property, in a time of great financial stress, at the instance of a few persons resident here and owning comparatively small interests therein, to the great detriment, probably, of the bulk of the owners and security holders across the seas. Unless the statute providing for the appointment of a receiver enabled appellees to sue where they would otherwise have had no cause of action, the appointment should have been denied. As already seen, we can not give the statute such a construction. Until a plaintiff has a cause of action of some sort—until he can show himself entitled to recover something—he is not in an attitude to appropriate any of the merely ancillary remedies of the courts. He must show a violated or imperilled right, either legal or equitable, before he is entitled to a remedy.

It follows, therefore, that the order appointing a receiver in this case must be reversed and the receivership vacated.

*Reversed, and receivership vacated.*

Delivered November 1, 1893.

A motion for rehearing was denied.