TOOMEY et al. v. FIRST MORTGAGE TRUST CO. et al. (No. 5524.)

(Court of Civil Appeals of Texas. San Antonio. June 2, 1915.)

1. CORPORATIONS ⬅️553 — RECEIVERS — APPOINTMENT—STATUTORY PROVISIONS.

In a suit by stockholders against a corporation and certain individual defendants, the petition alleged that through mismanagement, etc., by its officers and agents, the assets of the company had been decreased from $141,905, the amount of its capital stock, to $30,000 or less; that the officers had made loans on insufficient security, and, after alleging in detail the wrongful transactions claimed to have resulted in losses, it alleged that the defendants issued false statements as to the company's financial condition, and unlawfully declared, a dividend out of its capital, and that, having issued such false statements, they obtained proxies from stockholders, and by their use elected themselves directors that defendants had paid out for operating expenses over $28,000, and had on hand in cash only $5.92, that the company was without means to prosecute its business and had practically ceased to do business, and that if such officers were allowed to remain in control, its remaining assets would be wasted. It prayed for a receiver, that the court instruct him in his duties, and that plaintiffs have judgment in behalf of the company against the other defendants, without indicating what judgment against them was desired. Held, that as the corporation had not been dissolved, and it was not alleged to be insolvent or in imminent danger of insolvency, nor to have forfeited its corporate rights within Rev. St. art. 2128, § 3, and as the suit was not brought under article 1203, which authorizes stockholders to sue for the dissolution of a corporation, provided leave is granted by the presiding judge of the court in which the proceeding is instituted, and which is the only statute empowering a stockholder or creditor to sue to wind up a going corporation, the suit could not be maintained.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 2201–2216; Dec. Dig. ⬅️553.]

2. CORPORATIONS ⬅️202—STOCKHOLDERS' ACTION IN BEHALF OF CORPORATION—GROUNDS.

While individual shareholders, under proper circumstances, may institute suits for the corporation, which it refuses to institute, the allegations of circumstances justifying such authority must be clear and definite, and it must appear that the object of the suit is to recover debts for the corporation, and not to have a receiver appointed to administer its affairs.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 777–780, 822; Dec. Dig. ⬅️202.]

3. CORPORATIONS ⬅️557—OFFICERS—MISMANAGEMENT OF AFFAIRS—EXTENT OF RELIEF.

Equity will not appoint a receiver of a corporation and assume control and manage-

ment of its affairs at the suit of a stockholder alleging fraud, mismanagement, and collusion on the part of the corporate authorities, or ultra vires acts of the directors or of the corporation, but will limit the redress granted to the specific wrongs charged, and will go no further than to enjoin or forbid the misconduct complained of.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 2227, 2228, 2230–2236; Dec. Dig. ⚎557.]

4. RECEIVERS ⚎8—GROUNDS FOR RECEIVERSHIP—DISCRETION OF COURT.

The appointment of a receiver is, under proper pleadings, within the sound discretion of the court, and it is the exercise of authority over property which should not be given except when the circumstances fully demand it.

[Ed. Note.—For other cases, see Receivers, Cent. Dig. § 14; Dec. Dig. ⚎8.]

Appeal from District Court, Bexar County; S. G. Tayloe, Judge.

Suit by Ray Toomey and others against the First Mortgage Trust Company and others. From a judgment for defendants, plaintiffs appeal. Affirmed.

W. W. King, of San Antonio, for appellants. John T. Duncan, of La Grange, for appellees.

FLY, C. J. [1] This is a suit for the appointment of a receiver for appellee, instituted by Mrs. Ray Toomey, J. Pinnel, Ed Ney, Isaac Howe, J. P. Benkendorfer, and R. B. Huston in their own behalf and in behalf of the stockholders of the First Mortgage Trust Company, against that company, T. H. Bonner, Y. F. Mossop, William Sackville, John T. Duncan, and G. H. Porter. It was alleged: That appellee is a corporation created by a special act of the Legislature, on April 17, 1871, under the name of the Washington County Banking Insurance Company. That the charter was amended on September 17, 1911, the name being changed and the place of business moved from Brenham, Tex., to San Antonio, Tex. That after the charter was amended and officers elected the stock in the original company was canceled, and appellee issued and sold stock in the sum of $141,905, each share being of the par value of $100. That appellants bought 98½ shares of said stock, as follows: Mrs. Toomey, 20 shares at $1,900, J. Pinnel, 5 shares at $750, Ed Ney, 5 shares at $750, Isaac Howe, 1 share at $100, J. P. Benkendorfer, 57½ shares at $7,900, and R. B. Huston, 10 shares at $1,250, and that said shares were still owned by them. That through the mismanagement, negligence, carelessness, extravagance, and misappropriation on the part of the officers and agents of the company the assets of the company had been decreased from $141,905 to $30,000, or less. That said officers had made loans to different parties, taking insufficient security therefor. That they had unlawfully issued stock to R. E. Trabue and had loaned him $2,500, taking his note for $5,000, secured by shares in other companies. That Trabue became bank-

rupt, whereby the company lost $3,787.34. That said officers purchased from H. Masterson vendor's lien notes aggregating $22,-500, on land in Louisiana, for which they paid him $7,500 in cash and issued and delivered to him 100 shares of stock in defendant company, which vendor's lien notes at the time of their purchase were not worth 60 cents on the dollar, which was then known to said officer, and which notes are unpaid and suit is pending therefor. That the said defendants, on or about 19th day of December, 1913, made a purchase and sale of 7,126 acres of land in Cameron county, Tex., to W. F. Brice and E. S. Brodix, wherein the said defendant company paid the sum of $10,000 in cash, and assumed a prior vendor's lien upon said land in favor of V. Gavito for the sum of $35,000 and interest. That at the time of said sale and purchase the said land was worth less than the amount of the debt which said company assumed, which was then known to said officers. That the only security said company has for the payment of said money is the note of E. S. Brodix, long since due and unpaid. The said Brodix was then and is now insolvent, which was known to said officers. That the said transaction was made by the said Brodix through his influence as director and a member of the finance committee, and through the connivance of T. H. Bonner, who was then secretary, treasurer, and acting general manager of defendant company. That on or about the 29th day of November, 1913, said officers wrongfully and unlawfully issued and delivered to Edwin S. Brodix, one of its directors, 8½ shares of its capital stock, and in payment therefore took the said Brodix's unsecured note for $850, which has never been paid, and at that time Brodix was insolvent, which was then known to said officers. That on the 15th day of January, 1914, Thos. H. Bonner, while acting as secretary and treasurer of the company, borrowed from defendant company the sum of $500, and on the 11th day of August, 1914, the sum of $125.40, and gave as security seven shares of stock in an insolvent concern which had ceased to do business. That he has failed and refused to pay said note or to give security for its payment, and notwithstanding these facts, which were known to the defendants, they, as officers, have since elected him as secretary and treasurer of said company. That said defendants wrongfully and in violation of law issued to Chas. Voltz and others, who were insolvent, a large number of shares of stock in said company, and took in payment therefor their personal notes without security, except the stock so issued. That on the 22d day of May, 1913, the said officers loaned $5,959 of the company's money to J. A. Melugin, and T. H. Bonner, the secretary and treasurer of said company, wrongfully and unlawfully received and retained 10 per

cent. of said loan for making same, and which has never been paid to said company. That said officers issued stock to J. Armengol, William Sackville, and B. R. Taylor, together, 144 shares of stock in said company, for which they executed to said company their several notes, aggregating $13,250. Though said parties were solvent and able to pay the same the defendants wrongfully and unlawfully canceled said stock, and surrendered said notes to the makers in consideration of their subscribing for a like amount of stock in a new corporation known as the Pecos & Toyah Lake Irrigation Company of which these defendants were officers. That the defendants who are officers of the First Mortgage Trust Company are also officers and promoters of the Pecos & Toyah Lake Irrigation Company, a speculative, undeveloped enterprise, and have entered into a conspiracy among themselves to absorb the assets of the defendant company. That on or about the 3d day of January, 1913, defendants wrongfully and unlawfully caused to be issued to stockholders false and incorrect statements as to the financial condition of said company wherein they represented as a part of its loans and discounts a number of personal judgments to be of the value of $26,683.90, when in truth and in fact said judgments at that time were of no value whatever. That on or about the 10th day of February, 1913, said defendants wrongfully and unlawfully caused to be declared and paid a dividend of 5 per cent. upon its capital stock as a part of its earnings, when in truth and in fact, by reason of mismanagement aforesaid, defendant company had been operated at a loss, and there were no earnings when said dividend was paid, and the same was paid out of its capital. That the defendants, after having issued to the stockholders said false and incorrect statements, as aforesaid, obtained from said stockholders their proxies authorizing said T. H. Bonner to vote their stock at all future meetings of the stockholders of said defendant company, and at a meeting called on the 3d day of November, 1914, said defendants, by use of said proxies obtained, had a majority vote of the stockholders, and at said meeting refused to allow their reports to be examined when requested by these plaintiffs, and over the protest of plaintiffs adopted the reports of said officers, including the said false and incorrect statements, and at said meeting they also elected themselves as directors of said corporation. That the defendants, since said company has been in operation, have paid out for operating expenses the sum of $28,383.71, and now have on hand in cash only the sum of $5.92, and is without means or capital to prosecute its business of loaning money, and has practically ceased to do business. That if said officers are allowed to remain in control and management of said company, its remaining assets will be mismanaged, wasted, and consumed in salaries and useless and unnecessary expenses. The court sustained a general demurrer and special exceptions to the petition and dismissed the cause.

It is provided in section 3 of article 2128, Revised Statutes, that a receiver may be appointed—

"in cases where a corporation has been dissolved, or is insolvent, or in imminent danger of insolvency, or has forfeited its corporate rights."

In this case the corporation had not been dissolved, nor was it alleged to be insolvent or in imminent danger of insolvency, or that it had forfeited its corporate rights. This suit is one for the appointment of a receiver, and the fact that it is prayed that the court instruct such receiver in his duties does not tend to make the suit one for anything except the appointment of a receiver. The application for appointment of a receiver is not a cause of action in itself, but is merely ancillary to proceedings for the establishment of some right. The object of this suit is to appoint a receiver to sell all the assets of the company and distribute the same to stockholders; in fact it is the prayer of appellants "that the assets of said defendant, when administered by said receiver, be distributed among the stockholders." There is no statute in Texas empowering a stockholder or creditor to bring a suit to wind up a going corporation, except article 1203, under which this suit is not brought. As said by the Court of Civil Appeals of the Second District, in Land Co. v. Bindle, 5 Tex. Civ. App. 18, 23 S. W. 819:

"To appoint a receiver to sell all the assets of such corporation, and distribute the proceeds of sale among creditors and stockholders is to do indirectly what the law has not authorized to be done directly."

This was an attempt on the part of appellants to administer the estate of the corporation while it was an active, going concern, and that is not permitted by Texas law. It was never contemplated that a disaffected minority of shareholders should take the affairs of a corporation out of the hands of its lawful officers and place them in the hands of a receiver to be administered in the interest of the minority. As said by the court in the Bindle Case:

"That the affairs of a private corporation are liable to be managed by the majority against the wishes, and even the interests, of a minority is one of the ordinary risks of such ventures, which must be held to have been within the contemplation of each incorporator or his assigns."

See, also, Hermann v. Thomas, 143 S. W. 195.

That this suit is not ancillary to another asking relief for appellants can, at once, be determined by removing that part of the petition asking for a receiver and analyzing what is left, and it will readily appear that with the receivership gone there is no cause of action left that appellants could enforce. There was no prayer for any definite judgment except the appointment of a receiver.

The prayer, that "these plaintiffs have judgment in behalf of the defendant company against the other defendants herein" does not indicate what judgment appellants desired against the "other defendants herein." It cannot be ascertained from the body of the petition what appellants desired judgment for except for the appointment of a receiver.

[2] The right of individual shareholders under proper circumstances to institute suits for a corporation, which it refuses to institute, is not questioned, but the allegations of circumstances justifying such authority must be clear and definite, and it must appear that the object of the suit is to recover debts for the corporation, and not to have a receiver appointed to administer its affairs. Instead of the application for the appointment of a receiver being ancillary to some other proceeding, it is the only proceeding. "It is not only essential that the petition should state grounds calling for the appointment of a receiver to take charge of the property involved in the litigation, but it should also show upon its face an independent cause of action within the jurisdiction of the court." Style v. Lantrip, 171 S. W. 786; Hermann v. Thomas, 143 S. W. 195. Appellants do not claim to hold any indebtedness against the corporation, nor to have a lien on any of its property, and are basing their right to sue merely on an allegation of debts due the corporation.

The allegations of the petition tend to show some poor investments and poor judgment on the part of the directors, but fail entirely to show that the board of directors refused to institute suits for debts due the corporation, nor are the facts alleged sufficient to show that a request to sue would have been refused by the directors. There is no allegation in the amended petition that the directors at that time were the same as when the acts complained of were performed, and there is no allegation to show that the present directorate would not act to protect the interests of the corporation. It appears from the allegations that new directors have been elected since the acts complained of occurred. In the case of People's Inv. Co. v. Crawford, 45 S. W. 738, the pleadings were quite similar to the pleadings in this, the prayer being much more definite for judgment against a bank than the prayer is in this case, but this court held, through Associate Justice Neill, in that clear and forceful style for which he was distinguished:

"To wind up the affairs of the appellant corporation, and after paying its liabilities, if any, to distribute the proceeds of its assets among its stockholders, is one of the objects for which the appointment of a receiver was sought in this case. Such power, however, was not expressly bestowed upon the receiver by the order appointing him. But the authority conferred takes from the corporation all of its property and assets, and places them in the hands of the receiver; and, in effect, it deposes its officers and board of directors, and gives the management of all its affairs, and control of all of its property, to the receiver. This is done at the instance of a minority of the stockholders, contrary to the wish of a majority, and that, too, by stockholders who have no pecuniary demand against the corporation, and whose only grievance is the mismanagement by its officers and directors of its corporate affairs. Independently of their alleged grounds for a receiver they have no cause of action against appellant which entitles them to recover anything. And, as the appointment of a receiver is an ancillary remedy, they are, in the absence of a cause of action entitling them to something more than a receiver, not entitled to such appointment."

The quotation could not have more appropriately applied to the allegations in this case, if it had been written with the allegations before the judge who wrote it. This decision has often been approvingly cited by state and federal courts.

[3] Appellants contend that their allegations of fraud, misappropriation, and mismanagement on the part of the officers, whereby the assets of the corporation have been dissipated, makes a cause of action, but, as said in the Crawford Case:

"Courts of equity, by virtue of their general equitable jurisdiction, will not appoint a receiver of a corporation, and assume control and management of its affairs, at the suit of a stockholder alleging fraud, mismanagement, and collusion on the part of the corporate authorities, or ultra vires acts of the directors or of the corporation, but in such cases will limit the redress granted to the specific wrongs charged, and will go no further than to enjoin or forbid the misconduct complained of."

Speaking on the same subject, this court, through Associate Justice Moursund, held:

"In this state a court of equity has no power to appoint a receiver of a corporation ancillary to a stockholder's suit to wind up its affairs. Article 2128, Statutes of 1911, does not entitle a stockholder to the appointment of a receiver for the corporation upon the ground of insolvency, or imminent danger of insolvency, alone; but a stockholder urging such ground must, in addition thereto, show that he has a cause of action against the corporation independently of the receivership, and that his interest as such stockholder requires the appointment to be made." Williams v. Watt, 171 S. W. 266.

While there are some state courts that hold that a court will appoint a receiver where it is evident that continuation of business is impracticable or inequitable, still the weight of authority sustains Texas decisions in holding that a court will not appoint a receiver to administer on the estate of a corporation at the instance of dissatisfied stockholders, to whom the corporation is not indebted, in the absence of direct statutory authority for filing such suits. This suit is not instituted under the provisions of article 1203, Rev. Stats.

[4] The appointment of a receiver is, under proper pleadings, within the sound discretion of the court, and it is the exercise of authority over property which should not be given except when the circumstances fully demand it. It is an exercise of the powers of an equity court that should not be exercised in answer to the demands of dissatisfied

minority shareholders who would wreck where they cannot rule. In order to obtain the appointment of a receiver for a corporation it should appear that the plaintiff has a valid cause of action and his rights imperatively demand it, and it should not be used as a means of taking charge of affairs of a corporation when a minority has failed to secure a sufficient number of votes to run the business as they may desire. A court of equity will not lend its aid to a minority in getting the advantage of a majority of the stockholders. Continental Trust Co. v. Cowart, 173 S. W. 588.

The judgment is affirmed.

CARL, J., entered his disqualification, and did not sit in this case.