HOUSTON & B. V. RY. CO. v. HUGHES.
(No. 7209.)

(Court of Civil Appeals of Texas. Galveston. Dec. 14, 1915. Rehearing Denied Jan. 13, 1916.)

1. APPEAL AND ERROR ⬥⟿920—PRESUMPTION FAVORING COURT BELOW.

Assignments of error that the appointment of a receiver for defendant corporation was erroneous because no grounds therefor were stated in plaintiff's petition, and that the petition

upon which the order appointing a receiver was granted stated no cause of action against defendant, were equivalent to a general demurrer, when urged in a trial court, and required the appellate court to indulge all reasonable intendments in favor of the sufficiency of the petition to sustain the appointment of the receiver.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 3714–3721; Dec. Dig. ☞ 920.]

**2. RAILROADS ☞205—RECEIVER—PROPRIETY OF APPOINTMENT—STATUTE.**

Where a bondholder of an insolvent railroad corporation sued it, alleging waste and mismanagement and asking the appointment of a receiver, the petition, by its express allegations, showing that a suit on the bonds and for foreclosure would be premature, as the road had committed no default in the performance of the conditions of the mortgage constituting the contract between the parties, the appointment of a receiver was improper, although Rev. St. 1911, art. 2128, provides that receivers may be appointed in cases where a corporation is insolvent, since insolvency alone does not justify the appointment of a receiver, which is an ancillary remedy, while the instant suit was primarily for such purpose.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. §§ 673–675; Dec. Dig. ☞205.]

**3. APPEAL AND ERROR ☞781 — DISMISSAL — MOOT QUESTION.**

The appeal of a railroad, for which, at the instance of its bondholder, a receiver has been appointed, from the order of appointment, will not be dismissed as moot on the ground that the subject-matter of controversy has ceased to exist, because, subsequent to the appointment, a second receiver for the property is appointed by a United States court, and the road does not appeal from such second appointment, apparently acquiescing therein.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 63–80, 3122; Dec. Dig. ☞781.]

Appeal from District Court, Brazoria County; Samuel J. Styles, Judge.

Suit by Ed. S. Hughes against the Houston & Brazos Valley Railway Company. From a judgment for plaintiff, defendant appeals. Reversed and rendered.

A. E. Masterson, of Angleton, W. T. Andrews, of Stamford, and Andrews, Streetman, Burns & Logue, of Houston, for appellant. A. R. Rucks, of Angleton, S. P. Hardwicke, of Abilene, and Theodore Mack, of Ft. Worth, for appellee.

McMEANS, J. On October 27, 1915, Ed. S. Hughes brought this suit against the Houston & Brazos Valley Railway Company, praying for the immediate appointment of a receiver to take charge of all the properties, rights, and franchises of appellant, and his petition was presented to the honorable judge of the district court of Brazoria county in chambers and in vacation. On the same date, and upon ex parte hearing without notice to the defendant, the judge made an order in said cause appointing H. O. Wooten receiver of the defendant and all its properties, rights, and franchises of every kind, character, and description, directing that all persons in possession of any property of de-

fendant should forthwith deliver the same to the receiver, and restraining all persons from interfering with the possession and use thereof, or with the taking possession of said properties. From this order and judgment, the defendant has appealed.

The appellant in its brief has undertaken to set out the substance of the material allegations in the plaintiff's petition, as well as the exhibits attached to and made a part thereof, and, as this seems to have been correctly done, and as no objection thereto is urged by plaintiff, we adopt the same as our statement of the material allegations of the petition.

(1) The first paragraph merely alleges the residence of the parties. The second paragraph alleges that appellee is the owner of 205 of the first mortgage bonds of appellant of the denomination and par value of $1,000 each, dated July 1, 1907, payable July 1, 1937, with interest at the rate of 5 per cent. per annum, interest payable semiannually on the 1st day of July and on the 1st day of January of each year, that said bonds are of the aggregate value of $205,000, and that to secure and insure the payment thereof the defendant on July 1, 1907, made, executed, and delivered to Mercantile Trust Company of St. Louis, Mo., as trustee, its deed of trust mortgage upon all of the properties, rights, and franchises of the defendant railway company of every kind, character, and description whatsoever and wheresoever situated. The paragraph further describes said properties more in detail, and the petition refers to the said deed of trust mortgage and incorporates it in the petition. This exhibit is attached to the petition, and will be more particularly referred to in this statement.

(2) The third paragraph of plaintiff's petition alleges that the bonds are secured by first mortgage lien notes upon the properties of defendant, and that the payment of the bonds and the interest thereon is dependent upon the earnings and upon the successful operation and maintenance of the railroad and its properties.

(3) The fourth paragraph of the plaintiff's petition alleges that defendant is insolvent, that its present earnings are not sufficient to pay its operating expenses, and that for the past year or more the operating expenses have exceeded its earnings from $800 to $1,500 per month, and that plaintiff fears:

"That, if the operation is permitted to be continued by the defendant railway company under its present management, the expenses will continue to exceed the earnings."

(4) The same paragraph of plaintiff's petition further alleges that the alleged insolvent condition of defendant is due to the extravagance and mismanagement in the operation of the same, in that it has an excessive number of employés and pays excessive prices for its supplies and materials, and purchases inferior material and uses a great portion of its

earnings for the construction of additional facilities not justified by the traffic, in that said facilities are more than ample to take care of the traffic that may be reasonably expected for several years.

(5) The fifth paragraph of plaintiff's petition alleges that defendant has borrowed from time to time large sums of money to meet and pay obligations incurred by it by reason of its extravagance and mismanagement, and that it is indebted for moneys borrowed and advanced to it and material furnished to it, and is without funds with which to pay the same; that said indebtedness is increasing, and defendant cannot now secure further loans and advances to pay the current operating expenses; that the persons who have heretofore been making advances and loans to defendant have advised plaintiff that they will not continue to do so.

(6) The sixth paragraph of plaintiff's petition reads as follows:

"Plaintiff alleges that he fears, and has reason to believe, that if the properties of said railway company are permitted to remain in the control and operation of its present management that it will be so mismanaged and so extravagantly operated, and not having funds with which to meet same, as hereinbefore alleged, that large debts will accumulate against the properties of said railway company, including debts for wages and personal services, material furnished, and accounts of other railroads accumulate against it, all of which will create a prior lien upon the properties of said railway company, and will accumulate to such an amount as to materially injure, if not totally destroy, the value of plaintiff's bonds; that said railway company has not heretofore, and is not now, making any effort whatever, on account of the mismanagement and extravagance of the operation thereof, to pay, and has been unable to pay, the interest out of the earnings of said road on said bonds, and has not and is unable to create any sinking fund with which to eventually redeem said outstanding bonds when same mature, and, if they are permitted to continue to manage and operate same, that no provision will or can be made for the payment of said interest, or create a sinking fund for the ultimate redemption of said bonds at maturity, and that, therefore, by reason of the facts herein alleged, unless a receivership is granted herein and the properties of said railway company taken out of the hands of the present management, that plaintiff will suffer irreparable injury; that plaintiff has no adequate remedy at law."

(7) The seventh paragraph of plaintiff's petition reads as follows:

"And in this behalf plaintiff further shows to the court that it is necessary and imperative that your honor immediately appoint a receiver to take charge of and operate the properties of the defendant railway company, to prevent the present management from contracting for further additional and unnecessary materials, and thereby further increasing the indebtedness of said company, and impairing and injuring the properties of said company as security to plaintiff's bonds, and for the further reason that the persons owning the balance of the first mortgage bonds of said company, to wit, $215,000, and upon which default has been made in the payment of the interest due thereon, are nonresidents of the state of Texas, and are threatening to immediately file a petition in another jurisdiction asking that the properties of the defendant company be placed in the hands of a receiver, and in this behalf plaintiff shows that all of the properties of the defendant railway company are located in Brazoria county, Tex., that the greatest number of creditors of said company reside in Brazoria county, Tex., and that the management and operation of the defendant railway company can be · best, most conveniently, and most economically managed and operated by and under the order of this court."

(8) The eighth paragraph of plaintiff's petition alleges that defendant railway company, by reason of the matter set forth in said petition, as above referred to, "became, and is now, indebted to and liable to plaintiff in the sum of $205,000, together with interest thereon from and since the 1st day of July, 1915." The plaintiff does not in this or any other paragraph of the petition allege any default by defendant, or any demand· by plaintiff and refusal by defendant, or that any sum of the principal or interest is past due.

(9) The prayer of plaintiff is that the court immediately appoint a receiver and authorize him to take charge of all of the properties of defendant and operate the same under the orders of the court, to the end that they may be preserved, saved from injury and loss, and operated in such manner as to earn sufficient moneys to pay the expense of said defendant, including interest on plaintiff's bonds, as it will mature, and to create a sinking fund to redeem the bonds at maturity; the order to be perpetuated to such end. This is the primary prayer of the petition.

(10) The plaintiff makes an alternative prayer that, in the event the properties of defendant do not earn sufficient funds to pay the operating expenses and to meet and pay the obligations of said defendant, on final hearing in the cause plaintiff have judgment for $205,000, with interest thereon from July 1, 1915, at 5 per cent. per annum, together with foreclosure of his mortgage lien and order of sale and general and special relief.

(11) As above stated, the mortgage is incorporated in plaintiff's petition, and the parts thereof which are material in this proceeding are shown herewith. The mortgage contains a substantial copy of the form of bond, and it shows the following provisions:

"For a description of the mortgaged property, the nature and extent of the security, the rights of the holders of bonds, and the terms and conditions on which the bonds are issued and secured, reference may be had to said mortgage and deed of trust."

(12) After the description of the property conveyed in the granting clause, the trust of the conveyance is expressed as follows:

"But in trust, nevertheless, for the equal pro rata benefit and security of all the holders of the first mortgage bonds issued or to be issued under this indenture, without preference or priority of any bond over any other, or the coupons thereto belonging, by reason of priority in the time of issue and negotiation thereof, or otherwise, howsoever, and for enforcing the payment of the principal and interest thereof according to their tenor, with the power and au-

thority, and subject to the agreements, covenants, provisos, and conditions hereinafter expressed and declared."

(13) Of the succeeding covenants of the mortgage only the fourth, fifth, sixth, ninth, thirteenth, and fifteenth have any bearing upon the questions involved in this case. The fourth paragraph specifically provides that the railway company shall be entitled to retain possession of the premises until the events of default thereinafter described shall occur, and reads as follows:

"Fourth. Until the happening of one or more of the events hereinafter specified and termed the events of default, the railway company, its successors and assigns, shall be entitled to retain possession of the mortgaged premises, and to operate and use the same and receive and enjoy the earnings, income, and profits thereof."

(14) The fifth paragraph contains the description of all of the events of default named in the mortgage, and we give them by quoting the paragraph as follows:

"Fifth. If one or more of the following events, hereinafter called the events of default, shall happen, that is to say: (a) Default shall be made in the payment of any installment of interest of the first mortgage bonds when and as the same shall become payable as therein and herein expressed, and such default shall continue for the space of 30 days, or default shall be made in the payment of the principal of any of said bonds, when the same shall become due and payable by their terms, or by declaration, or otherwise; (b) default shall be made by the railway company in the observance or performance of any other of the covenants, conditions, and agreements in the first mortgage bonds, or in this indenture expressed, and the railway company shall not remedy such default within three months after written notice stating such default, and requiring the railway company to comply with such covenant or condition, shall have been served upon the railway company by the trustee—then and in any of such events the trustee, personally or by its attorneys or agents, may, in its discretion, enter into and upon all and singular the mortgaged premises and each and every part thereof, and shall until the same be sold, or surrendered to the railway company, its successors or assigns, as hereinafter provided, possess, use, manage, and operate the same."

The covenants and agreements of the railway company are shown in paragraph 13 of the mortgage, and are described hereinafter.

(15) The following constitutes all of the material part of the sixth paragraph:

"Sixth. If one or more of the events of default shall happen, the trustee, upon requisition of the owners of a majority in amount of the first mortgage bonds then outstanding, shall declare the principal of all the first mortgage bonds, unless already due, to be forthwith due and payable, without notice to the railway company, anything in said bonds or herein contained to the contrary notwithstanding. Such requisition may be evidenced by an instrument in writing, duly signed and acknowledged by persons proved to the reasonable satisfaction of the trustee to be the owners of a majority in amount of the first mortgage bonds then outstanding, or by their representatives duly authorized in writing. Such proof may be made by affidavit."

(16) The thirteenth paragraph contains the specific covenants of the railway company, the first of which is to pay the interest and principal upon the bonds; the second to pay taxes, assessments, and governmental charges, unless it shall in good faith contest the validity thereof; the third is a covenant that it will not create or suffer to be created any lien or charge upon the mortgaged premises prior to the lien of this indenture, "or do any act or thing whereby the lien or security hereof may be impaired"; the fourth is a covenant that the railway company will properly maintain the mortgaged premises, renewing and replacing the same as may be necessary, preserve the franchises, and keep the buildings adequately insured against loss by fire; the fifth covenant provides that the company will execute such further deeds and conveyances as may be required by the trustee; and the sixth covenant provides that it will indemnify and save harmless the trustee from loss occasioned by the execution of the trust, and not caused by the personal misconduct of the trustee.

(17) The fifteenth paragraph of the mortgage is as follows:

"Fifteenth. No holder of the first mortgage bonds or coupons shall have the right to institute any suit, action, or proceeding, at law or in equity, upon or in respect of this indenture, or for the execution of any power or trust hereof, or for the appointment of a receiver, or for any other remedy under or upon this indenture, unless such holder shall previously have given to the trustee written notice of some existing default and of the continuance thereof as hereinbefore provided; nor unless also the holders of a majority in amount of the first mortgage bonds then outstanding shall have made written request upon the trustee, and shall have afforded to the trustee reasonable opportunity to proceed itself to exercise the powers hereinbefore granted or to institute such action, suit, or proceedings in its own name after such right of action shall have accrued to the trustee, nor unless also such holder or holders shall have offered to the trustee adequate security and indemnity against the costs, expenses, and liabilities to be incurred in or by reason of such action, suit, or proceeding; and such notification, request, and offer of indemnity are hereby declared in every such case, at the option of the trustee, to be conditions precedent to the execution of the powers and trusts of this indenture, and to any action or cause of action for foreclosure or for the appointment of a receiver, or for other remedy hereunder; it being intended that no one or more holders of the first mortgage bonds or of the coupons pertaining thereto shall have any right in any manner whatever to affect, disturb, or prejudice the lien of this indenture by his or their action, or to enforce any right hereunder, except in the manner herein provided, and that all proceedings hereunder shall be instituted, had, and maintained in the manner herein provided and for the equal benefit of all the holders of such outstanding bonds and coupons; but the foregoing provisions of this section are intended only for the protection of the trustee, and shall not be construed to affect any discretion or power by any provisions of this indenture given to the trustee to determine whether or not the trustee shall take action in respect of any default without such notice or request from bondholders, or to affect any other discretion or power given to the trustee. No delay or omission of the trustee or of any holder of the first mortgage bonds to exercise any right or power accruing upon any default shall impair any such

right or power or shall be construed to be a waiver of and such default or acquiescence therein, and every power and remedy given by this indenture to the trustee or to the bondholders may be exercised from time to time and as often as may be deemed expedient by the trustee or by the bondholders."

[1] The appellant's first assignment of error complains that the appointment of the receiver was erroneous for the reason that no legal or equitable grounds therefor are stated in the appellee's petition which would justify the appointment of a receiver; and the second assignment asserts that the petition upon which the order appointing a receiver was granted stated no cause of action against appellant. These assignments are equivalent to a general demurrer when urged in a trial court, and require us to indulge all reasonable intendments in favor of the sufficiency of the petition to sustain the action of the court in appointing the receiver, wresting the property of the appellant from the control of its owner and placing it in the possession of another. If, indulging such intendments, it can be held that the petition states a cause of action, then the assignments must be overruled; if not, then the order appointing a receiver must be reversed and vacated, and the receiver discharged.

[2] Looking to the allegations of the petition, and construing the same most favorably to the pleader, we are of the opinion that the pleading sufficiently charges that the Houston & Brazos Valley Railway Company was insolvent, or in imminent danger of insolvency, at the time the petition was exhibited. Article 2128, Revised Statutes 1911, provides that receivers may be appointed "in cases where a corporation has been dissolved, or is insolvent, or in imminent danger of insolvency. * * *" But does insolvency of a corporation alone justify the appointment of a receiver? This question has been answered negatively by the Ft. Worth Court of Civil Appeals in Espuela Land, etc., Co. v. Bindle, 5 Tex. Civ. App. 18, 23 S. W. 819, where a similar question was presented. In that case Justice Stephens, speaking for the court, said:

"While it is not very clear to us that the fact of insolvency was established, we are of opinion that we would not be warranted in disturbing the finding on that issue. The question then arises: Can a stockholder or lien creditor of an insolvent corporation which is still a going concern have a receiver appointed to take charge of the entire assets, and convert the same into money for general distribution, on the sole ground of insolvency? * * * The answer to this question involves a construction of article 1461 of our Revised Statutes (now article 2128), which provides, in substance, that any judge of a court of competent jurisdiction may appoint a receiver in case where a corporation is insolvent. This question has never been * * * adjudicated in this state, that we are aware of. Statutes of identical import with ours have been construed by the Supreme Courts of California and Indiana; but the decisions seem to be directly in conflict. French Bank Case, 53 Cal. 495; Bank v. Tile Co. [105 Ind. 227] 4 N. E. 851.

In the former case it is said: 'There is, of course, no such thing as an action brought distinctively for the appointment of a receiver; such an appointment, when made, is ancillary to or in aid of the action brought.' It was there held that the statute providing for the appointment of a receiver where a corporation becomes insolvent, in the absence of a more explicit legislation, did not 'confer upon a private person, either as stockholder or creditor, the right to maintain an action to dissolve a corporation upon the ground that it was insolvent, or to obtain relief by seizing its property out of the hands of its constituted management, and placing it in the hands of a receiver.' In the latter case the opposite conclusion seems to have been reached. * * * We see nothing in our statute to indicate that the Legislature intended thereby to so change the whole scope of receiverships as to convert a merely auxiliary proceeding into a primary object of litigation. * * * Unless the statute providing for the appointment of a receiver enabled appellees to sue where they would otherwise have had no cause of action, the appointment should have been denied. As already seen, we cannot give the statute such a construction. Until a plaintiff has a cause of action of some sort—until he can show himself entitled to recover something —he is not in an attitude to appropriate any of the merely ancillary remedies of the courts."

The same principle, viz., that insolvency alone is no ground for the appointment of a receiver of a corporation, is recognized in Galvin v. McConnell, 53 Tex. Civ. App. 486, 117 S. W. 211, where it is said:

"Mere insolvency of a corporation in equity is no ground for the appointment of a receiver (5 Pom. Eq. § 116), though by our statute in general terms it seems to have been made so."

In the case last referred to a suit was filed by 'the plaintiff against the Jacksboro Stone Company, a corporation, and certain private individuals, to recover judgment upon a promissory note then due, and to foreclose a mortgage upon property of the corporation which had then matured. Afterwards certain of its creditors intervened and prayed for the appointment of a receiver. They set up no cause of action against the corporation in their intervention, and asked for no judgment against it, but sought, as a primary object, the appointment of a receiver; and it was upon their petition that the receiver was appointed. It was upon this state of facts that the language quoted was used.

We do not wish to be understood as holding that the insolvency of a corporation is not a ground for the appointment of a receiver, for such holding would be directly contrary to the provisions of the statute above quoted; but what we think that the cases referred to hold, and what we mean to hold, is that a receiver should not be appointed on the ground of insolvency unless the plaintiff shall by his suit seek the recovery of a judgment of some kind against the insolvent corporation and pray for the appointment of a receiver as a purely ancillary remedy. In no case ought a receiver to be appointed on the ground of insolvency of a going concern, as the primary and sole object sought to be effected by the suit.

It will be observed by referring to the material allegations of plaintiff's petition as above set out that plaintiff alleged no default in the payment of the mortgage indebtedness according to contract; it alleges no default in the performance of the conditions of the mortgage constituting the contract between the parties; it does not allege that there is any present impairment in the security given to secure the payment of the bonds held by plaintiff; it does not allege that there would be any impairment in the future by a continuation of the alleged mismanagement which had theretofore prevailed according to the allegations of the petition. The petition contains in full the contract of the mortgage to which plaintiff, as a holder of bonds, is subject, and this mortgage provides in paragraph 4 that the appellant shall be entitled to the enjoyment and possession of the mortgaged properties so long as it is not in default in the performance of the covenants of the mortgage. The events of default are set forth in said contract and in the petition, and there is no allegation in any part of the petition to the effect that any of said events of default have occurred, or that the covenants of appellant have not been performed. The petition charges appellant with no fraud, and does not charge the trustee with any fraud or neglect. It shows on its face that, before it can proceed with an action, it must first request the trustee to act, but the petition does not allege that any such request has been made on the trustee, or that the trustee has refused to act to the complete protection of the appellee. It shows further that all interest due upon appellee's bonds has been paid to him as it accrued, and that the bonds do not mature until 1937. It is true that appellee in the alternative prayed that, in the event the properties of defendant do not earn sufficient funds to pay the operating expenses and to meet and pay the obligations of appellant, on final hearing he have judgment for the amount of his bonds, with interest and foreclosure of his mortgage lien, etc.; but, whatever his ultimate rights may be, the petition by its express allegations shows that a present suit upon the bonds and for foreclosure is premature, and that he has no more standing in court on the face of the petition than if he had brought a simple suit to recover a judgment upon a promissory note which had not matured. Looking to the whole petition, it is manifest, we think, that the primary and sole purpose of the suit was for the appointment of a receiver, and that such appointment was not sought as "an ancillary right to a cause of action and a preliminary protective measure by which the property is impounded and held by the court until the cause of action alleged is judicially determined."

It is well settled by Texas decisions that the appointment of a receiver is an ancillary remedy, and that before a receiver will be appointed the plaintiff's petition under which the appointment is sought must state a cause of action against the defendant. If it does not, the prayer for the appointment of a receiver should be denied. We have already held that the mere insolvency of a corporation, there being no cause of action stated in the petition, or other ground than insolvency alleged, is of itself no ground for the appointment of a receiver. The authorities are numerous, but we shall quote but few of them.

In Farwell v. Babcock, 27 Tex. Civ. App. 162, 65 S. W. 509, it is said:

"The first proposition of appellants is, in substance, that the right to the appointment of a receiver of a corporation is not a cause of action, but only an ancillary right to a cause of action, 'and a preliminary protective measure by which property is impounded and held by the court until the cause of action alleged is judicially determined. If there is no cause of action alleged, then no right exists to have a receiver appointed. This proposition is correct, and is supported by the following authorities: Land & Cattle Co. v. Bindle, 5 Tex. Civ. App. 21, 23 S. W. 819; Investment Co. v. Crawford, 45 S. W. 738; Iron Co. v. Blevens, 12 Tex. Civ. App. 410 [34 S. W. 828].'"

In Hermann v. Thomas, 143 S. W. 195, this court, speaking through Chief Justice Pleasants, says:

"The general proposition that the right to the appointment of a receiver is not a cause of action, or, in other words, does not exist, independent of some other right, or the infringement of some right of the plaintiff which would entitle him to maintain an action therefor, and when no cause of action is shown in the petition, and no relief sought, other than the appointment of a receiver, such relief will not be granted, is well settled."

In Style v. Lantrip, 171 S. W. 786, it is said:

"Except in case of lunatics and infants, the appointment of a receiver alone does not constitute a cause of action. The exercise of such appointing powers is purely auxiliary, depending upon the pendency of a suit seeking some other and ultimate relief which is within the jurisdiction of the court. * * * It is not only essential that the petition should state grounds calling for the appointment of a receiver to take charge of the property involved in the litigation, but it should also show upon its face an independent cause of action within the jurisdiction of the court."

In Continental Trust Co. v. Brown, 179 S. W. 939, the San Antonio Court of Civil Appeals ruled as follows:

"Hildebrand and Hopkins are not suing the Boston & Texas Corporation, except that they ask for a receiver. So, as to them, it is purely a suit for a receiver, and the courts of this state, as well as all other recognized authorities, have uniformly held that a bill which has for its sole object the appointment of a receiver will not be entertained. This court has only recently so held in an opinion written by the Chief Justice. Toomey v. First Mortgage Trust Co., 177 S. W. 539. A receivership is ancillary to the main suit where a cause of action exists and is asserted independent of such receivership. * * * *"

See, also, Williams v. Watt, 171 S. W. 268.
It follows from what has been said that

it is the opinion of this court that the judge of the court below was without authority to appoint a receiver under the allegation of the petition exhibited to him. It is therefore ordered that the judgment be reversed and the order appointing a receiver vacated, and the receiver discharged. This obviates the necessity of a discussion of the other assignments of error presented by appellant in its brief. .

[3] At the time of the submission of this case the appellee presented a motion to dismiss the appeal therein, the reason suggested therefor being that the question submitted to this court for adjudication is a moot question and purely academic, and that it does not involve any substantial issue or genuine controversy. This contention is based upon the fact that upon the same day in which the district judge of Brazoria county appointed H. O. Wooten receiver, but at a later hour of the day, a receiver for the property of the appellant corporation was appointed by the United States District Court for the Southern District of Texas, upon the application of the Freeport Texas Company, a Delaware corporation, without notice. Attached to the motion as exhibits are: (1) A certified copy of the petition of the Freeport Texas Company, which is in the nature of a creditors' bill, in which, as such creditor, it sought to subject the property of the corporation to the payment of its debt, bringing the suit for itself and for all creditors of the appellant similarly situated, and praying for the appointment of a receiver as an ancillary remedy; (2) a certified copy of the order of the judge of said court appointing a receiver; and (3) the oath; and (4) the bond of the receiver.

Appellee contends with much earnestness, in effect, that the fact of the appointment of a receiver in another forum, from which no appeal is taken, and which is apparently acquiesced in by the appellant, brings the case within that class of cases illustrated by the case of Telegraph Co. v. Galveston, 59 S. W. 589, in which it was held that, when the subject-matter of controversy between the parties to a suit has ceased to exist, the courts will not try the case to determine the question of what the rights of the parties are, or, as stated by Chief Justice Roberts in Lacoste v. Duffy, 49 Tex. 768, 30 Am. Rep. 122, it has not been customary in our courts to decide questions of importance after their decision has become useless.

We are unable to appreciate the force of appellee's contention in this regard or the applicability of the principle enunciated in the case relied upon by him. The subject-matter of the litigation has not been destroyed nor ceased to exist by reason of the action of the United States District Court, or otherwise. Our statutes authorize appeals from interlocutory orders appointing receivers, and in appealing in this case the appellant was exercising a legal right, and has the right to have its appeal determined upon its merits. What some other court has done, or what it may do, in case the order appointing a receiver, when tried out on its merits, may be vacated, is a matter with which this court cannot concern itself.

We think the motion to dismiss the appeal should be overruled; and it has so been ordered.

Reversed and rendered.