**STROUD MOTOR MFG. CO. v. GUNZER et al. (No. 6779.)**

(Court of Civil Appeals of Texas. San Antonio. March 15, 1922. Rehearing Denied April 12, 1922.)

**1. Venue ⬯32(1)—Question of privilege must be raised in limine.**

A question of privilege as to proper venue of a suit must be raised in limine, at the proper time.

**2. Corporations ⬯555—Question of privilege respecting venue on appointing receiver must be determined when properly raised.**

While any court having jurisdiction of the subject-matter of a case may in a proper case appoint a receiver for a corporation whose principal office and assets are located in another county, when the privilege as to the proper venue is properly presented, it must be determined.

**3. Corporations ⬯555—Court in county other than that of domicile held without jurisdiction to appoint receiver where question of privilege properly presented.**

Under Rev. St. art. 2150, requiring that an action to appoint a receiver be brought in the county where the principal office of the corporation is located, a court of a county other than that in which the headquarters and all the property of a corporation were located was without jurisdiction to appoint a receiver, where the question of privilege was properly raised, especially where no notice was given the corporation, and nothing was alleged to justify such appointment without notice.

**4. Receivers ⬯9, 12—Persons giving notes to association held not entitled to receivership of corporation to which notes were transferred.**

Where persons acting as trustees, agents, and members of an unincorporated association by fraud induced plaintiffs to purchase beneficial interests in such association, and thereby, as claimed rendered themselves and the association liable to plaintiffs, and made themselves and the association trustees for plaintiffs of the proceeds of notes given for such interests, but without plaintiffs' consent delivered such trust fund to a corporation of the same name as the association, which mingled it with its general assets, plaintiffs thereby acquired no lien, and were not entitled to the appointment of a receiver for the corporation, without making the association a party or alleging that it or the trustees were insolvent or cannot be made to respond to plaintiffs' demands.

**5. Associations ⬯16—Liable as partnership for debts incurred by trustees.**

An unincorporated association constituting a joint-stock company, partnership, or estate would be liable as a partnership for debts incurred by its trustees in carrying on its business.

Appeal from District Court, Sutton County; James Cornell, Judge.

Suit by Carl Gunzer and others against the Stroud Motor Manufacturing Company and others. From an order appointing a receiver, defendant manufacturing company appeals. Reversed, and receivership ordered dismissed.

Birkhead & Lang and Arnold & Cozby, all of San Antonio, for appellant.

J. J. Strickland, John Sehorn, Will A. Morriss, and W. E. Engel, all of San Antonio, for appellees.

COBBS, J. As appellee says, regarding appellant's statement of the case, that it is "in its main essentials" correct, we copy it, as follows:

"On January 17, 1922, nine plaintiffs joined together in one suit against five defendants in the district court of Sutton county. The nine plaintiffs alleged nine separate causes of action in the same suit and petition, alleging in substance that each one of the nine plaintiffs had subscribed for stock in a common-law trust or copartnership known as the Stroud Motor Manufacturing Association, the subscriptions being made on different days and for different amounts and upon different terms. The plaintiffs alleged that each subscription had been induced by false representations made by the agent who was selling the stock. The petition discloses that the total aggregate of money that was paid out on these several subscriptions up to the time of the filing of the suit aggregated $6,875, and that various of the plaintiffs have still outstanding and unpaid certain stock subscriptions which aggregated a total of $2,175, and one of the plaintiffs has outstanding his negotiable notes aggregating $3,000. The cause of action of each one of these plaintiffs was separate and distinct from the others.

"These plaintiffs allege in the petition that they were induced by the false representations of one Dwyer to subscribe for this stock, and that Dwyer was the agent of the Stroud Motor Manufacturing Association, and allege that the Stroud Motor Manufacturing Association was a joint-stock company, a partnership, or a trust estate, and that the defendants, Mr. Stroud, Mr. Lemburg, Mr. Hoerster, and Mr. Slaughter, were at the time acting as trustees, agents, and managers of said Stroud Motor Manufacturing Association, which was a partnership or trust estate.

"The Stroud Motor Manufacturing Association, a joint-stock company or trust estate, was not made a party to this suit. However, the Stroud Motor Manufacturing Company, a corporation, was made a party defendant to this suit. The petition alleged that this corporation acquired from said association the money paid by the plaintiffs on their stock subscriptions, and has mingled this money with the rest of its assets. This corporation was made a party defendant, but no personal judgment is sought against it by the plaintiffs. This corporation is not in any manner, according to the allegations of the petition, connected with the original alleged fraud in the procuring of the stock subscription, and the only connection it has with the plaintiffs' cause of action is

⬯For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

that the plaintiffs allege that the money which was paid for their stock subscriptions was, without their authority, delivered by the said association to this corporation, and used by the corporation in the purchase of some of its assets.

"The plaintiffs' petition asks for the appointment of a receiver to take possession of all of the assets of the corporation, and is sworn to by two of the plaintiffs, and was presented to the district judge in chambers. Upon the allegations of the verified petition and without any notice to the defendants, the district judge in chambers, on January 17, 1922, on the very day the petition was filed, entered an order appointing L. J. Wardlaw as receiver of the corporation, with authority to take charge of all the assets, and on the same day, January 17, 1922, Receiver Wardlaw took his oath as receiver and filed his bond and qualified.

"The plaintiffs' petition shows that the corporation, Stroud Motor Manufacturing Company, is a Texas corporation, with its headquarters and all of its property in Bexar county. J. J. Strickland, the attorney who filed the petition for the plaintiffs, is a lawyer who resides in San Antonio. The receiver L. J. Wardlaw is an attorney who resides at Fort Worth. The suit was filed in Sutton county, which is about 50 miles off of the railroad, several hundred miles from San Antonio, where the principal place of business of the defendant corporation exists.

"The Stroud Motor Manufacturing Company, the corporation, as soon as it was apprised of the appointing of the receiver, filed the appeal bond in Sutton county, and this appeal was perfected by said corporation for the purpose of vacating the said receivership."

[1, 2] In respect to the proper venue of the suit, a question of privilege must be raised in limine, at the proper time. It is not an open question that any court having jurisdiction of the subject-matter of any case may in the proper case appoint a receiver other than in the county where the principal office of the corporation or the principal assets of the corporation are located, but when that privilege is properly presented it should be determined by the court.

[3] The petition on its face alleges that appellant is a domestic corporation, with its principal office and place of business at San Antonio, Bexar county. There is not a single ground of venue alleged to be in Sutton county against it. Article 2150, R. S., provides:

"If the property sought to be placed in the hands of a receiver is a corporation whose property lies within this state, or partly within this state, then the action to have a receiver appointed shall be brought in this state in the county where the principal office of said corporation is located."

This statute is plain and unambiguous. Appellees do not point out a single venue statute otherwise that fixes the venue, but content themselves by simply saying, "We dispose of by citing" Wills Point M. Co. v. Plow Co., 31 Tex. Civ. App. 94, 71 S. W. 292; Com. Telephone Co. v. Trust Co., 38 Tex. Civ. App. 192, 86 S. W. 68; Bonner v. Hearne, 75 Tex. 248, 12 S. W. 38; Com. Bonding, etc., Co. v. Bowles (Tex. Civ. App.) 192 S. W. 612; C. J. vol. 14A, p. 963 "venue." The case in 31 Tex. Civ. App. 94, 71 S. W. 292, was an appeal from the order of the court refusing to vacate the receivership because appointed without notice. The trial court's order was affirmed, because the point was not raised in the trial court. The question is here before us, properly raised by the assignment of error, on appeal direct from the order itself. The court further held in that case the plea was waived because it contracted to pay its obligation in another county than its domicile when suit was brought.

"The want of notice to the company is not suggested, nor is the question of privilege, by said plea. That the court appointing the receiver had jurisdiction to appoint a receiver is clearly decided in Bonner v. Hearne, 75 Tex. 242, 12 S. W. 38. But treating the same pleas as presenting the question of privilege, we are of the opinion that the court properly exercised jurisdiction. The said mercantile company had contracted to pay the indebtedness alleged in Dallas county, thereby waiving its privilege to be sued in Van Zandt county, and, the suit being for the purpose of enforcing the collection of said indebtedness, the court could exercise for that purpose all the powers granted to it under the Constitution and laws of the state. The appointment of a receiver falls within the scope of that power. Article 1488, Rev. St., having been construed by the Supreme Court to only confer a privilege on corporations to have a receiver appointed by a court where its domicile is situate, such comes within the general venue statutes, and an agreement to pay its obligations in a county other than its domicile waives the privilege under said article of having a receiver appointed by a court where its domicile is situated." Wills Point Mercantile Co. v. Plow Co., supra.

To the very same effect is the case of Com. Tel. Co. v. Territorial Bank & Trust Co., 38 Tex. Civ. App. 192, 86 S. W. 68.

There is no prayer in this petition to take charge of all the assets to wind up its affairs as the court is discussing in the last-cited case. In the case Com. Bonding, etc., Co. v. Bowles (Tex. Civ. App.) 192 S. W. 612, although a suit against a pending receivership and arising in a case contesting the appointment of a receiver itself of a corporation, is in direct harmony with the cited cases, and concludes in this language:

"So we think that when it be ascertained that it was the intention of the Legislature to restrict suits against receivers of corporations to the counties in which the principal office of such corporation may be situated, it follows, under principles which we have announced, that the venue thus fixed by the laws governing this particular character of suits will control over the provisions of the general venue statute."

The cited case of Bonner v. Hearne, 75 Tex. 248, 12 S. W. 38, does not support ap-

pellees' contention, but to the contrary. That case had rather a rugged time in a fight for the mastery of the International & Great Northern Railroad Company and its possession. It was in the public mind very much, and so cautious was our great Supreme Court in deciding the questions involved, and in continuing that receivership, that it said:

"In determining this case we have individually read and considered the numerous able arguments of counsel."

There is nothing new in that case after all. It was on a contest for the possession of the property by two different receivers, one appointed in the district court of Anderson county and the other of the district court of Smith county. There was no contest whatever made by the corporation as to any privilege it had in the matter to be sued in the proper county, and it seemed indifferent as to who was to ride this Pegasus. In the absence of any such plea of privilege the court was simply holding that district courts in proper cases having jurisdiction of the subject-matter, as Smith county, through which county the road traversed, by having first appointed the receiver, and the district court of Anderson county, later acquiring jurisdiction by a subsequent proceeding, holding that the Smith county district court did not have jurisdiction and its action was void, the Supreme Court turned down the Anderson county contention, and reversed this judgment and continued the receiver appointed by the Smith county district court in possession of the property.

The action of the district court of Sutton county being now challenged as to its jurisdiction, it was error in that court to appoint the receiver. It was without jurisdiction in the premises. Besides, there is nothing alleged in the petition that justifies the harsh remedy of appointing a receiver to take charge of that property, without notice, in Sutton county.

[4] The gravamen of this suit was that Sam W. Stroud, F. W. Lemburg, Ben Hoerster, and A. L. Slaughter, acting as trustees, agents, and managers of an enterprise under the name of Stroud Motor Manufacturing Association, a joint-stock company partnership or trust estate, by and through their agent, Pat Dwyer, in order to induce appellees to purchase units or beneficial interests in that association, falsely and fraudulently represented and stated to the plaintiff that the association was producing and manufacturing farm tractors, and the entire output of the year had been contracted for at great profit, and the association was then employing and working not less than 300 men in the manufacture of said tractors, and the stock offered was worth not less than the sum of $1.50 on the dollar. That others had offered to purchase all of the certificates of beneficial interest or units of said association, which offers were refused because of a

desire to distribute the stock among as large a number of purchasers as possible for advertising purposes. That each and all of said statements were false and untrue, and made with the purpose and intent of deceiving plaintiffs, and to induce them to purchase, subscribe, and contract for the purchase of units or certificates and pay money and execute notes therefor. It is alleged the amount of subscription of each, the amounts for which each delivered his note, which notes were transferred before maturity; that the total of their payments in cash aggregates $6,875; that by reason of such transaction a legal liability was created against each of the makers, certain notes outstanding aggregating $2,175, and one for $3,-000, separately executed and delivered, besides the money paid in; that the representations were so made to appellees by Pat Dwyer, the agent of said parties in Sutton county.

That on account of the alleged fraud which induced the execution of said notes and payment of money the legal and equitable title never passed out of them, except that they passed to innocent purchasers. The trustees and said association became personally liable to the plaintiffs, and the money or consideration obtained for said notes equitably belonged to plaintiffs, and the trustees and the association became trustees of the proceeds of said notes for the benefit of plaintiffs in proportion to the note or notes given her or him.

That the trustees of the association without their consent delivered the trust fund to appellant, who accepted it with full knowledge of all the facts, and confused and mingled such trust fund with its general assets, and fraudulently used and employed the same with its other moneys to purchase and acquire its present property and assets, and it is not now susceptible of separation or identification, and that the plaintiffs are the equitable owners of such properties and assets of said appellant, and assert an equitable lien against the entire mass of the properties to secure the repayment of the moneys so paid by them. It is not apparent from the allegations whether the trustees collected all the notes and paid to the association the funds, or whether the association had anything to do with it through its directors directing the delivery of any of the notes or of any of the funds to appellant otherwise than by the trustees.

It is alleged the assets of the appellant are of the reasonable fair value of the sum of $100,000, and the assets are in danger of being sold, removed, materially injured, destroyed, dissipated, and lost. That the properties are being operated at a heavy loss of several thousand dollars per month, and that the officers and directors of said corporation are squandering and dissipating the assets and paying themselves large salaries (stating to whom and the amounts). A further

ground is that the principal and most valuable asset consists of the exclusive right to manufacture, assemble, and sell what is known as the Stroud All-in-One Tractor, acquired from W. C. Rarig, upon condition, should appellant deem it advisable to discontinue the manufacture or assembling and sale thereof, all patents and rights should revert to W. C. Rarig. That through neglect or dissension between the officers and the directors it discontinued the manufacture thereof, and, if not already lost, is in danger thereof, and will do so unless a receiver is appointed to continue the manufacture thereof or sell the right before it is lost. That the agent Dwyer represented to them at the date of sale the stock would earn a net dividend of from 40 to 60 per cent. on the amount invested, which Dwyer knew at the time to be false, and upon which they relied in making the purchase. They represent the only remedy by which the assets of said corporation and their interest in or lien upon the same can be preserved, protected, and enforced is by the appointment of a receiver, because there is immediate and pressing necessity therefor, and, should it be delayed, their rights will be jeopardized greatly. They allege they have no other adequate remedy. They do not allege that the defendants, nor the appellant, are insolvent, and cannot be made to respond to them for damages in an action at law. It does show the appellant solvent, and, for aught this petition shows, every dollar of alleged damages may be collected from the other defendants and the association. They pray for personal judgment against each of the individual defendants, not because of their individual alleged fraud, but for the money paid to each as trustees based upon their representations. They pray for personal judgment against appellant for such proportion of the properties and assets of the appellant as the money so paid by them came into its hands, and for which they are now liable, based upon the aggregate value of such assets, or in the alternative for an equitable lien against all its properties and for foreclosure of such lien.

The appellees, on the one hand, are seeking a personal judgment against the trustees of the Stroud Motor Manufacturing Association, but do not make it a party to this suit, and make no allegation that either of said trustees or the association are insolvent, so that they cannot respond in damages for any of the alleged wrongs. No power of a court of equity is required or will be given through a receivership to grant relief in a case as here presented.

[5] The mere fact that the trustees placed the amount received from the sales of the notes or the notes themselves in the treasury of appellant, instead of the association who mingled the same with its other funds, states no case of equity jurisprudence for creating a lien in their favor, or to appoint a receiver

to take charge of the funds of the treasury of a corporation because it is charged such funds others claim an interest in are mingled with the corporate funds. This would be a dangerous precedent. It is true, in actions of tort, that the plaintiff has the right to select the party desired to be sued, and to sue one or more joint contractors. Now, the association as a partnership would be liable for the debts incurred by the trustees in carrying on the business.

It is held in an opinion just handed down, Wells et al. v. Mackay Telegraph Company, 239 S. W. 1001, by the Galveston court, dated December 17, 1921, that such common-law associations as shown herein are to be treated as partnership associations, with partnership liabilities. If the trustees placed the money received from these notes in the treasury of the association, they that far performed their duty. When the appellees executed their notes, and signed their subscription, they severally acquired an interest, or, as appellant calls it, a unit in the association. But appellees alleged that the trustees collected and paid the so-called trust funds to appellant, who accepted it with knowledge of all the facts. What facts? And mingled it with the funds of appellant.

We think this bill is wholly without equity, and no ground is stated sufficient to justify the appointment of a receiver to take charge of appellant's property. Merchants' Transfer Co. v. Hildebrand (Tex. Civ. App.) 200 S. W. 552; Toomey et al. v. First Mortgage Co. (Tex. Civ. App.) 177 S. W. 539.

The order of the court appointing the receiver is therefore reversed and set aside, and the receivership is hereby dismissed.